IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

NOVEMBER 1998 SESSION



**FILED**

**December 30, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | C.C.A. No. 01C01-9710-CR-00496 |
| Appellee, | ) | |
| | ) | Davidson County |
| v. | ) | |
| | ) | Honorable Cheryl Blackburn, Judge |
| JOHN HENRY ROBINSON, III, | ) | |
| | ) | (Sentencing) |
| Appellant. | ) | |

FOR THE APPELLANT:

Jeffrey A. DeVasher
Assistant Public Defender
1202 Stahlman Building
Nashville, TN  37201-5066
(On Appeal)

J. Michael Engle
Assistant Public Defender
1202 Stahlman Building
Nashville, TN  37201-5066
(At Trial)

OF COUNSEL:
Karl Dean
District Public Defender
1202 Stahlman Building
Nashville, TN  37201-5066

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter
425 Fifth Avenue North
Nashville, TN  37243-0493

Timothy Behan
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN  37243-0493

Victor S. (Torry) Johnson, III
District Attorney General
222 Second Avenue North, Suite 500
Nashville, TN  37201-1649

Dan Hamm
Assistant District Attorney General
222 Second Avenue North, Suite 500
Nashville, TN  37201-1649

Roger D. Moore
Assistant District Attorney General
222 Second Avenue North, Suite 500
Nashville, TN  37201-1649

OPINION FILED: _____

AFFIRMED

L. T. LAFFERTY, SENIOR JUDGE

# O P I N I O N

The appellant, John Henry Robinson, III, referred herein as the defendant, appeals as of right his sentence for voluntary manslaughter imposed by the Davidson County Criminal Court. The defendant, charged with murder first degree, was convicted by a Davidson County jury of voluntary manslaughter. The trial court imposed a Range I sentence of confinement for six years in the Corrections Corporation of America. Also, the trial court denied the defendant's request for probation or split confinement, finding continuous confinement was the appropriate sentence.

The defendant raises one issue for our review:

> Whether the trial court erred in imposing the maximum sentence allowable by law, and further erred in imposing a sentence of continuous confinement.

Based upon our review of the entire record, briefs of the parties, and applicable law, we affirm the trial court's judgment.

## FACTUAL BACKGROUND

The Davidson County grand jury indicted the defendant for the offense of murder first degree for the killing of Marvin Lewis Bright on May 15, 1996 at their place of employment. The defendant and victim were co-employees at Trailers Conditioners, Inc. and had developed a turbulent relationship over the years. The following salient facts evolved during the trial.

Carl Reed, a trailer mechanic at Trailers Conditioners, Inc., had known the defendant and the victim for many years. Reed testified that the victim told Reed, "I'm going to go ahead and mess with him [the defendant]." The victim and defendant exchanged words and Reed heard a "lick." Reed and another employee, James Smith, went into the restroom and separated the defendant and victim, who were in a scuffle. The

2

victim had the defendant on the floor. As Reed and Smith were walking out of the restroom, they heard a gunshot and the victim stumbled in front of Reed. Both Reed and Smith ran to the office. The victim got up and ran to the other side of the office, where he fell again. The defendant walked up to the victim who was lying on his back. Reed testified the defendant said, "I told you . . . to stop messing with me or what would happen." The defendant then fired a second shot. The victim responded, "Okay man, you know. That is enough." Before the second shot, the gun appeared to jam, but the defendant cocked it again. The victim got up and ran. The defendant followed the victim and fired a third shot. The victim ran outside and was found under the rear wheels of a truck. The defendant left in his blue Ford pickup truck.

Reed testified the defendant and victim had a long history of extremely verbal confrontations. Several months before the shooting, Reed attended a boxing match at the Music City Mix Factory, in which the victim and the defendant agreed to a fist fight to resolve all their differences. The victim was the winner of the fight and later bought Reed and the defendant rounds of beer. The victim had a videotape made of the match which was shown to fellow employees at the shop.

James Smith, friend of both the defendant and victim, testified both men began arguing. Smith told the victim to leave the defendant alone. However, the defendant struck the victim and both went into the restroom. Smith and Reed followed them and broke up the fight. As Smith was leaving the restroom, he heard a gunshot. The victim staggered out the door, followed by the defendant with a gun in his hand. The victim had his hand on his back, which was bloody. The victim fell and the defendant stood over him with his gun. The victim said, "It's over, man, it's over." The defendant responded, "I told you if you hit me, I was going to kill your ass dead." The defendant cocked his gun, but it jammed. The defendant recocked the gun and fired. The victim got up and ran out of the building. The defendant followed and fired another shot at the victim.

Glenn Bloodworth, a co-worker with the victim and defendant, testified as he went

3

into the office the defendant and victim were arguing. Bloodworth heard a "slap." Reed and Smith went out to break up the fight between the defendant and victim. Bloodworth heard a gunshot and went to the office door as Reed and Smith came running in, knocking Bloodworth against the wall. Bloodworth saw the victim lying against the tool cabinet. The defendant was about six feet from the victim with a gun in his hand. The victim said, "You know, you got me, it's over with, John." The defendant responded, "No, I told you if you ever put your hands on me, I was going to kill you. It's not over with now until I say it is." The defendant cocked the gun and shot the victim. While Bloodworth ran for the supervisor, the victim got up and ran.

Officer James Arendall, Metro Police Department, testified he heard a broadcast for a Ford pickup involved in a shooting. Officer Arendall was advised of the defendant's home address and proceeded to that location. The defendant's wife answered the door and informed the officers her husband was in the back bathroom. The defendant yelled out and told the officers of his location and that the gun was in the blue coat in the chair. Officer Arendall found the gun with one live round in the clip.

Both the state and the defendant stipulated that the autopsy report revealed the victim died from two gunshot wounds to the torso. Two small caliber bullets were recovered.

The defendant testified that from late April to May 15, 1996, he worked many long hours for United Parcel Service and Yellow Freight Lines as an over-the-road truck driver. Apparently, this work was in addition to his work for Trailers Conditioners, Inc. The defendant described the victim as a bully in the shop who was always fighting and arguing with different people. The victim also liked to spit on people. For about eight years, the victim had harassed the defendant. The defendant informed his doctors, supervisors, and co-employees about his problems with the victim. As a result of his difficulties, the defendant was prescribed medication. The defendant testified that the victim had assaulted him on two occasions away from work. The victim promised the defendant if

4

he and the victim boxed at the Mix Factory, the victim would leave him alone. The defendant agreed to this boxing match; however, the victim continued to harass the defendant.

As to the offense, the defendant testified he was approaching the water fountain when the victim began calling him insulting names and spitting on him. The victim told the defendant, "Bitch, I'm going to rape your wife and daughter, and then I'm going to f--- your son." As the defendant turned to leave, the victim spat on him, grabbed him, and carried him into the restroom. The defendant and victim scuffled in the restroom. The victim pinned the defendant on the floor by the commode and struck the defendant, saying "[I'm] going to cut [your] pretty ass face off." The victim had something in his hand which the defendant could not identify. While on the floor, the defendant got his gun and fired it twice. The victim turned and ran. The defendant thought the victim was running to his toolbox where he kept his weapons. The defendant could not recall his exact movements after the shooting.

Based on this testimony, the jury found the defendant guilty of voluntary manslaughter.

**SENTENCING**

In the first part of his appellate issue, the defendant contends the trial court erred in imposing the maximum sentence of six years in lieu of three years. The defendant argues the sentence is excessive in that the trial court improperly applied two statutory enhancement factors and failed to apply at least five statutory mitigating factors. The state insists the trial court properly confined the defendant.

5

**A.**

When a defendant complains of the imposition of his or her sentence, we must conduct a *de novo* review with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). Therefore, the burden of showing that the sentence is improper is upon the appealing party. *Id.* The presumption that determinations made by the trial court are correct is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn. 1991); *State v. Smith,* 891 S.W.2d 922, 929 (Tenn. Crim. App.), *per. app. denied* (Tenn. 1994).

If appellate review reflects the trial court properly considered all relevant facts and its findings of fact are adequately supported by the record, this Court must affirm the sentence, "even if we would have preferred a different result." *State v. Fletcher,* 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). In arriving at the proper determination of an appropriate sentence, the trial court must consider: (1) the evidence, if any, received at the trial or guilty plea and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statements the defendant wishes to make in the defendant's behalf about the sentencing; and (7) the potential for rehabilitation and treatment. Tenn. Code Ann. §§ 40-35-210(a) and (b) (1997), § 40-35-103(5) (1990); *State v. Holland,* 860 S.W.2d 53 (Tenn. Crim App. 1993).

In the case before us, the trial court correctly applied the sentencing principles, thus the presumption of correctness applies. As part of our analysis, we recognize a sentence imposed under the Tennessee Criminal Sentencing Reform Act of 1989 should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. Tenn. Code Ann. § 40-35-103(4). The defendant was convicted of voluntary manslaughter. Tenn. Code Ann. § 39-13-211. As a Range I offender, the defendant's sentencing range

6

is three to six years. The trial court found the following enhancement factors applicable to this cause: the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; the defendant possessed or employed a firearm, explosive device or other deadly weapon during the commission of the offense;[1] and the defendant had no hesitation about committing a crime when the risk to human life was high. Tenn. Code Ann. § 40-35-114(1)(9)(10).

As mitigating factors, the trial court found the defendant had a long and stable work history, as well as family and community support. Tenn. Code Ann. § 40-35-113(13).

The defendant maintains the trial court erred in applying enhancement factor (1), Tenn. Code Ann. § 40-35-114, a previous history of criminal convictions or criminal behavior in addition to necessary to establish the range. In its ruling, the trial court found the defendant had a 1978 misdemeanor conviction and the defendant's criminal behavior consisted of his past use of marijuana and the persistent carrying of a weapon for many years, both violations of the law and company policy. A review of the presentence report established the defendant was 43 years of age and used marijuana between the ages of 21 to 26, more than fifteen years ago. Standing alone, this factor would not rise to the level of criminal behavior permitting enhancement of a sentence. *State v. James E. Brice,* No. 03C01-9605-CC-00189 (Tenn. Crim. App., Knoxville, December 3, 1996); *State v. Clifford Atkins,* No. 03C01-9302-CR-00058 (Tenn. Crim. App., Knoxville, March 3, 1994).

In *State v. Carrico,* 968 S.W.2d 280, 288 (Tenn. 1998), our Supreme Court addressed for the first time the term "criminal behavior." In *Carrico,* the defendant was convicted of aggravated rape of a 10-year-old child. In May 1985, the victim told her school teacher that during the preceding year the defendant on numerous occasions had fondled her breasts and genitalia, digitally penetrated her vagina, forced her to perform fellatio on him, and committed other sexual acts upon her. The trial court sentenced the defendant to twenty-five years, finding the defendant had a history of criminal behavior

---

[1]The defendant concedes the trial court properly applied this factor.

7

based on evidence of acts committed other than the specific act on which the conviction was based. Our Supreme Court held that a trial court may utilize criminal behavior shown by a preponderance of the evidence to enhance a sentence without violating federal or state due process. More specifically, the Supreme Court stated:

> The phrase "criminal behavior" has not been defined by this Court for purposes of the enhancement factor, but, whatever the precise definition may be, sexual acts with a 10 year old child clearly constitute criminal behavior. The evidence of the appellant's prior sexual acts was properly considered by the trial court as criminal behavior. That evidence supports the finding that enhancement factor (1) was established in this case.

*Id.* at 288.

We find the trial court was correct in finding that the defendant had a history of criminal behavior in the continuous carrying of a weapon for many years.[2]

Next, the defendant contends the trial court was in error for finding that he had no hesitation about committing a crime when the risk to human life was high, under Tenn. Code Ann. § 40-35-114(10), in that the evidence is insufficient to support the application of this factor. Also, the defendant submits that this factor is inherent in the offense of voluntary manslaughter and thus cannot be applied. The state argues this factor is not inherent in this case and the trial court properly applied this factor under the facts in this cause.

In its ruling, the trial court found that three individuals, Carl Reed, James Smith, and Glenn Bloodworth, were in very close proximity to the defendant when he fired his gun at the victim. It was necessary for Reed and Smith to run from the restroom, when they heard the gunshot behind them. The evidence reflects the witnesses were within four to eight feet of the different shots. We find the record supports enhancement factor (10). While this court has consistently held that this factor should not be applied when the only person subject to being injured is the victim, this factor is not inherent, as the state points out,

---

[2]The defendant's act of carrying this weapon for self-defense purposes was not justifiable.

8

when other persons present could have been injured. *State v. Makoka,* 885 S.W.2d 366, 373 (Tenn. Crim. App.) *per. app. denied* (Tenn. 1994).

Further, the defendant contends the trial court failed to apply five statutory mitigating factors, Tenn. Code Ann. § 40-35-113:

> (2) The defendant acted under strong provocation;
>
> (3) Substantial grounds exist tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;
>
> (8) The defendant was suffering from a mental or physical condition that significantly reduced the defendant's culpability for the offense; however, the voluntary use of intoxicants does not fall withing the purview of this factor;
>
> (10) The defendant assisted the authorities in locating or recovering any property or person involved in the crime; and
>
> (11) The defendant, although guilty of the crime, committed the offense under such circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct.

In rejecting to apply mitigating factors (2) and (3), the trial court ruled that these two factors did not apply, referring to them as "double mitigation." By the very nature of the jury's verdict in finding the defendant guilty of voluntary manslaughter, the jury found the defendant acted with provocation and there was no substantial excuse or justification for the killing. In rejecting factor (8), the trial court found the evidence did not support this factor. The trial court found the defendant's claim of total exhaustion was brought on by the defendant's voluntary working conditions. The defendant's co-employees testified as to the clearness of the defendant's statements to the victim. In rejecting factor (10), the trial court found the recovery of the pistol from the defendant's jacket at the time of his arrest was not applicable. As to factor (11), the trial court ruled this factor was not applicable in that the defendant and victim's conduct had been ongoing for years, bolstered by the fact that the defendant had carried a pistol for years. The trial court did find as mitigation the defendant had a long history of employment and family and community support.

9

After due consideration, the trial court found, "the enhancing factors . . . far outweigh any mitigation in this case, and, therefore, a sentence of six years is appropriate." We find the record supports the trial court's judgment that a six-year sentence is appropriate. There is no merit to this issue.

**B.**

The defendant argues that the trial court erred in sentencing him to continuous confinement and that the trial court should have placed him on probation after a period of confinement.

In its ruling, the trial court stated:

> These events and the facts of this case are violent, horrifying, shocking, and reprehensible to this community. The jury in this case chose, based on the facts, to find Mr. Robinson guilty of only voluntary manslaughter. That is their choice and that is their duty, and the verdict in this case would clearly support a conviction of not only voluntary manslaughter, but murder in the first degree.

> It is by Mr. Robinson's good fortune that he was found guilty of voluntary manslaughter, but I cannot, in good conscience, allow Mr. Robinson on probation, given the nature and the facts of this case, and, therefore, I'm finding that confinement is necessary to avoid depreciating the seriousness of this offense. It is very important that people be able to go to work during the course of their day and not have to be afraid that somebody is going to whip out a gun and take care of some altercation that could easily have been handled in some other manner. . . .

The standards governing a trial court's determination of whether continuous confinement should be imposed are outlined in Tenn. Code Ann. § 40-35-103(1):

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses, or

> (C) Measures less restrictive than confinement have

10

frequently or recently been applied unsuccessfully to
the defendant.

Since the defendant was found guilty of voluntary manslaughter, a Class C felony, the defendant is presumed to be a favorable candidate for probation, in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6).

Where a defendant is entitled to the statutory presumption of alternative sentencing, the state has the burden of overcoming the presumption with evidence to the contrary. Conversely, the defendant has the burden of establishing suitability for full probation, even if the defendant is entitled to the statutory presumption of alternative sentencing. Tenn. Code Ann. § 40-35-303(b)(1994 Supp.); *State v. Bingham,* 910 S.W.2d 448, 455 (Tenn. Crim. App.), *per. app. denied* (Tenn. 1995). In order to deny an alternative sentence based on the seriousness of the offense, "the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree," and the nature of the offense must outweigh all factors favoring a sentence other than confinement. *Bingham,* 910 S.W.2d at 454 (quoting *State v. Hartley,* 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991)).

Ordinarily, the death of an individual in a homicide, a Class C felony, cannot by itself constitute sufficient "evidence to the contrary" to deny an alternative sentence. Based on the facts in this record, we find the trial court was correct in imposing continuous confinement. The record clearly establishes that the defendant and victim had an ongoing

11

turbulent relationship even to the extent of conducting a boxing match to resolve their differences. Notwithstanding the results of the boxing match, the verbal jousting continued between the defendant and victim. On the day in question, the defendant, who had been assaulted by the victim, pulled an automatic pistol and shot the victim in the back as the victim left the restroom. Not satisfied with shooting the victim in the back, the defendant followed the victim out of the restroom. Even though the victim lay on his back pleading for his life, the defendant recocked his jammed automatic and fired again. There is no merit to this issue.

_____
L. T. LAFFERTY, SENIOR JUDGE

CONCUR:


_____
PAUL G. SUMMERS, JUDGE


_____
JOE G. RILEY, JUDGE