# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

## STATE OF TENNESSEE v. DAVID CARL ORR

**Direct Appeal from the Circuit Court for Madison County**
**No. 98-303      Franklin Murchison, Judge**

---

**No. W1998-00010-CCA-R3-CD - Decided May 19, 2000**

---

The appellant, David Carl Orr, was convicted in the Madison County Circuit Court of voluntary manslaughter. The trial court sentenced the appellant as a standard, Range I offender to four years and six months in the Tennessee Department of Correction. On appeal, the appellant challenges the trial court's sentencing determination. In essence, the appellant contests the length of his sentence, arguing that the trial court erroneously applied the enhancement factor set forth in Tenn. Code Ann. § 40-35-114(1) (1997) in determining his sentence. The appellant also contests the trial court's denial of a sentencing alternative to incarceration. Following a thorough review of record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.**

OGLE, J., delivered the opinion of the court, in which WADE, P.J., and WILLIAMS, J., joined.

Daniel J. Taylor, Jackson, Tennessee, for the appellant, David Carl Orr.

Paul G. Summers, Attorney General and Reporter, R. Stephen Jobe, Assistant Attorney General, Al Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The appellant's conviction of voluntary manslaughter arose from the fatal shooting of Alton Templeton on November 20, 1997, in front of the appellant's home in Jackson, Tennessee. The evidence adduced at trial established that Mr. Templeton had engaged in an affair with the appellant's wife, Sandra Orr, during a period of separation between the appellant and his wife. Subsequently, the Orrs decided to reconcile, whereupon Ms. Orr confessed to the appellant her relationship with Mr. Templeton and attempted to terminate the relationship. However, Mr. Templeton began to call the appellant's home during all hours of the day and night. On several occasions, he spoke with the appellant, "cuss[ed] and harass[ed] him," and, according to the appellant, threatened to kill him.[1]

---

[1]Additionally, following the appellant's reconciliation with his wife, the Orrs' home was burglarized. Several of the appellant's belongings, including two guns, were stolen during the

On the night of the homicide, the appellant returned home intoxicated and informed his wife that he intended to call Mr. Templeton and confront him concerning his repeated telephone calls to the appellant's home. The appellant did in fact call Mr. Templeton and demand an explanation for the harassment. According to the appellant, Mr. Templeton again threatened to kill him and also threatened to burn his house down. The appellant concluded the conversation by stating, "Just come over here. Just come over here then." Following the conversation, the appellant located his shotgun and loaded the weapon with ammunition. According to Ms. Orr, the appellant stated at this time that he intended to kill Mr. Templeton.

Mr. Templeton soon arrived at the appellant's residence. He got out of his car, removed his shirt, and began yelling obscenities at the appellant. He also informed the appellant that he and Ms. Orr were currently engaged in an affair. Accordingly, the appellant went outside to meet Mr. Templeton, initially leaving his shotgun inside the carport attached to his home. He and Mr. Templeton then began to fight. Several neighbors who witnessed the altercation testified at the appellant's trial that the two men appeared to be engaged in "mutual combat." Finally, the appellant threatened to call the police, and Mr. Templeton responded that he intended to leave. Mr. Templeton picked up his shirt, got into his car, and shifted the car's transmission into reverse gear. At this point, the appellant retrieved his shotgun and shot into Mr. Templeton's vehicle, killing the victim.[2]

The appellant was indicted by a Madison County Grand Jury on one count of first degree murder, and his case proceeded to trial on September 28, 1998. At the conclusion of the trial, the jury returned a verdict of guilt of the lesser included offense of voluntary manslaughter. The trial court conducted a sentencing hearing on November 3, 1998.

At the sentencing hearing, the State relied primarily upon the evidence adduced at trial and the pre-sentence report. The pre-sentence report reflects that the appellant has been steadily employed at least since 1996. His criminal record included one conviction in 1993 for public intoxication. Additionally, at the time of the instant offense, the appellant had been indicted for aggravated assault and was released on bond in that case. With respect to the appellant's indictment for aggravated assault, the State also presented the testimony of Sandra Orr that the appellant had whipped her with a belt. Finally, Mr. Templeton's parents and his brother submitted statements for the court's consideration.

The appellant, in turn, presented letters from various individuals including family members, friends, former employers, and former teachers, and also presented the testimony of his uncle, William Luther Hinds. Mr. Hinds testified that, if the appellant were released, he would return to his hometown of Lewisburg, Tennessee, where "he has a support system behind him in his

_____

burglary. The appellant attributed this burglary to Mr. Templeton and also attributed to the victim several nighttime disturbances at the appellant's home.

[2]On the night of the murder, Mr. Templeton had a blood alcohol level of 0.17 and also tested positive for the presence of a marijuana metabolite. The appellant had a blood alcohol level of 0.18.

family and his friends." Mr. Hinds further testified that the appellant possesses a "very good work ethic." He observed that the appellant had always worked, was a certified pipe welder, and would face no difficulty in finding employment following his release from incarceration.

As a Range I offender, the appellant was subject to a sentence of not less than three nor more than six years incarceration in the Tennessee Department of Correction for the offense of voluntary manslaughter. See Tenn. Code. Ann. § 39-13-211 (b) (1997) and Tenn. Code. Ann. § 40-35-112(a)(3) (1997). As noted earlier, the trial court imposed a mid-range sentence of four years and six months incarceration in the Tennessee Department of Correction. In support of its sentencing determination, the court entered the following findings of fact:

> All right, in this case, the Court finds the following aggravating circumstances, and I use reference to 40-35-114. The Court finds Number 1 to be present, the defendant has a previous history of criminal behavior in addition to those necessary to establish the appropriate range. Of course, the range is one. This is not a heavy aggravating factor, I'll admit. He does have some prior history of domestic violence. It does appear that he had a public drunkenness conviction way back there somewhere. It does appear from the evidence that he had been driving under the influence. Now, these are no convictions except for the public drunkenness but that one conviction for a Class C misdemeanor and some criminal behavior.
>
> * * *
>
> The Court does find as an enhancement factor Number 9, the defendant possessed or employed a firearm during the commission of the offense. That's pretty clear that that happened. That is not a necessary element of the offense of homicide and can be and will be and is considered an aggravating factor.
>
> * * *
>
> So, we find Number 1 and Number 9 enhancement factors. Number 1 is not particularly serious. The Court does always consider, and very serious though, the possession of a firearm. That is a very serious enhancement factor. That pulls the case up off of the minimum sentence of three years.

Additionally, the court found in mitigation that the appellant possesses a good employment history and also possesses a high potential for rehabilitation. In particular, the court noted that the appellant enjoyed "a great deal of family and friend support." Nevertheless, the trial court denied the appellant any form of sentencing alternative to incarceration in order to avoid depreciating the seriousness of the appellant's offense and in light of the need for deterrence.

## II. Analysis

Again, the appellant challenges both the length of his sentence and the trial court's denial of a sentencing alternative to incarceration. Appellate review of the length, range, or manner of service of a sentence is de novo. Tenn. Code. Ann. § 40-35-401(d) (1997). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial

and the sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statement by the defendant on his own behalf; and (7) the potential for rehabilitation or treatment. Tenn. Code. Ann. § 40-35-102, -103, -210 (1997). See also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is upon the appellant to demonstrate the impropriety of his sentence. Tenn. Code. Ann. § 40-35-401, Sentencing Commission Comments. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determination a presumption of correctness. Id. at (d); Ashby, 823 S.W.2d at 169.

The statutorily prescribed procedure for determining the length of a felony sentence is set forth in Tenn. Code. Ann. § 40-35-210. The presumptive sentence for a class C felony is the minimum sentence in the range. Id. at (c). However, if there are enhancement and mitigating factors, a court must start at the minimum sentence in the range, enhance the sentence as appropriate for the enhancement factors, and then reduce the sentence as appropriate for the mitigating factors. Id. at (e). Assigning the appropriate weight to applicable factors is within the discretion of the trial court when "'balancing the relative degrees of culpability within the totality of the circumstances of the case involved.'" State v. Boggs, 932 S.W.2d 467, 475 (Tenn.Crim.App. 1996)(citation omitted).

Initially, the record supports the trial court's imposition of a mid-range sentence. In reaching this conclusion, we note that the appellant does not contest the trial court's application of Tenn. Code Ann. § 40-35-114(9), concerning the appellant's use of a firearm during the commission of the offense; nor does the appellant contest the trial court's consideration of mitigating factors. Moreover, we reject the appellant's assertion that Tenn. Code. Ann. § 40-35-114(1) is inapplicable in this case, because the trial court relied upon criminal behavior by the appellant of which he was not convicted. We acknowledge that a mere arrest or criminal charge does not constitute "criminal behavior" within the meaning of Tenn. Code Ann. § 40-35-114(1). State v. Carico, 968 S.W.2d 280, 288 (Tenn. 1998). Conversely, however, this enhancement factor is not solely applicable to "actual convictions." State v. Johnson, No. 03C01-9901-CR-00009, 1999 WL 1052006, at *7 (Tenn.Crim.App. at Knoxville, November 12, 1999). Rather, in enhancing a sentence, a trial court may utilize criminal behavior shown by a preponderance of the evidence. Carico, 968 S.W.2d at 288. See also State v. Robinson, No. 01C01-9710-CR-00496, 1998 WL 934577, at **4-5 (Tenn. Crim. App. at Nashville, December 30, 1998), perm. to appeal denied, (Tenn. 1999).

In this case, testimony at trial established that, on the day of the homicide and immediately before the homicide, the appellant committed the offense of driving under the influence of an intoxicant. Of course, this court has been reluctant in the past to use Tenn. Code Ann. § 40-35-114(1) "to enhance subsequent criminal acts as a result of previous ones occurring very close in time." State v. Hicks, 868 S.W.2d 729, 732 (Tenn. Crim. App. 1993). Accordingly, this testimony alone would not support the application of the criminal history enhancer. Id. However, Sandra Orr's testimony at the sentencing hearing also established that the appellant had previously assaulted her

-4-

with a belt.[3] Finally, the pre-sentence report reflects a misdemeanor conviction in 1993 of public intoxication. In sum, while we agree with the trial court that enhancement factor (1) is not entitled to great weight, we cannot conclude that the trial court erred in affording some consideration to this factor in determining the length of the appellant's sentence.

We also reject the appellant's assertion that the trial court erred in denying him a sentencing alternative to incarceration. In this regard, however, the trial court failed to state on the record whether it was applying the presumption in favor of alternative sentencing set forth in Tenn. Code. Ann. § 40-35-102 (6). On appeal, the State concedes that the appellant was entitled to the presumption. Nevertheless, upon a de novo review, we conclude that "evidence to the contrary" not only overcomes the presumption but militates in favor of the appellant's confinement. Id.

We note, and the State properly concedes, that the record before this court does not support the trial court's finding of a need for general deterrence. "A finding that the appellant's sentence will have a deterrent effect cannot be merely conclusory." State v. Zeolia, 928 S.W.2d 457, 461 (Tenn.Crim.App. 1996). Yet, under Tenn. Code. Ann. § 40-35-103(1)(B) and Tenn. Code. Ann. § 40-35-210(b)(4), the nature and circumstances of an offense may serve as the sole basis for denying a sentencing alternative to incarceration if the offense was especially violent, horrifying, reprehensible, offensive, or otherwise of an excessive or exaggerated degree, and the nature of the offense outweighs all factors favoring a sentencing alternative to incarceration. State v. Grissom, 956 S.W.2d 514, 520 (Tenn. Crim. App. 1997)(citing State v. Bingham, 910 S.W.2d 448, 454 (Tenn. Crim. App. 1995)).

We agree with the State that our decision in State v. Buell, No. 01C01-9607-CC-00292, 1997 WL 677947 (Tenn. Crim. App. at Nashville, November 3, 1997), is *somewhat* analogous to the instant case and does provide some guidance. In Buell, the victim and the defendant had been friends for approximately two years. Id. However, on the morning of the defendant's offense, the victim accused the defendant of sexually assaulting the victim's daughter. Id. at *1. Twenty minutes later, the victim arrived at the defendant's house and verbally accosted the defendant's wife. Id. While the victim was cursing at the defendant's wife, the defendant retrieved a ".30 caliber lever action rifle" and fired a round into the air. Id. The victim immediately entered his vehicle, whereupon the defendant fired a second shot. Id. The second shot entered the windshield of the victim's vehicle and struck the victim in the chest. Id. The defendant asserted at his trial that he had fired the second shot accidentally. Id. At the conclusion of the defendant's trial, although the defendant had been indicted on one count of first degree murder, the jury found the appellant guilty of the lesser included offense of voluntary manslaughter. Id. at *2. In sentencing the defendant, the trial court denied the defendant an alternative sentence solely on the basis of the seriousness of the offense. Id. at *4.

In upholding the trial court's sentencing determination, this court in Buell noted that

---

[3]Ms. Orr's testimony at the sentencing hearing suggests that this incident occurred prior to the Orrs' separation and the commencement of Ms. Orr's relationship with Mr. Templeton.

"[c]onsideration of leniency in both the verdict and the length of the sentence are proper considerations for finding confinement necessary under Tenn. Code Ann. § 40-35-103(1)(B)." Id. See also State v. Braden, No. 01C01-9610-CC-00457, 1998 WL 85285, at *8 (Tenn. Crim. App. at Nashville, February 18, 1998)(jury leniency is properly considered by the trial court in finding that confinement is necessary under Tenn. Code Ann. § 40-35-103(1)(B)). Additionally, this court has recognized that "the voluntary combination of alcoholic intoxication with dangerous instrumentalities is a matter of serious public concern which may justify a denial of [an alternative sentence]." State v. Sutton, No. 03C01-9806-CC-00204, 1999 WL 301587, at *4 (Tenn. Crim. App. at Knoxville, May 14, 1999).[4] Finally, as correctly noted by the State, the record does reflect that, at the time of the instant offense, the appellant was released on bond in another criminal case involving a violent act. See also Tenn. Code Ann. § 40-35-103(1)(C)(in imposing a sentence involving confinement, a court may consider that "[m]easures less restrictive than confinement have . . . recently been applied unsuccessfully to the defendant").

### III. Conclusion

For the foregoing reasons, we affirm the judgment of the trial court.

---

[4]The appellant testified that he only obtained his shotgun, because Mr. Templeton threatened to kill him and burn his house down. However, the appellant instigated the confrontation with Mr. Templeton on the evening in question. Moreover, at the time the appellant used his shotgun, Mr. Templeton was departing.