IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
July 25, 2006 Session

## STATE OF TENNESSEE v. CLIFFORD WAYNE MORRIS

**Direct Appeal from the Criminal Court for Unicoi County**
**No. 5400    Lynn W. Brown, Judge**

---

**No. E2005-01957-CCA-R3-CD Filed October 30, 2006**

---

The Petitioner, Clifford Wayne Morris, pled guilty to attempted dissemination of a cordless telephone transmission, a Class A misdemeanor.  The trial court sentenced the Defendant to eleven months and twenty-nine days with a thirty day period of incarceration to be served prior to release on probation.  On appeal, the Defendant contends that the trial court erred when it sentenced him.  After thoroughly reviewing the record and the applicable authorities, we reverse the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Remanded**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID G. HAYES, and J.C. MCLIN JJ., joined.

Olen G. Haynes, Jr., Johnson City, Tennessee, for the appellant Clifford Wayne Morris.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Joe C. Crumley, Jr., District Attorney General; Melanie Gwinn, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I.  Facts**

This case arises from the Defendant's conviction for dissemination of a cordless telephone

transmission, a Class A misdemeanor. A Grand Jury originally indicted the Defendant for intentionally, without the consent of at least one party to the communication, disseminating a transmission between a cordless telephone and a landline telephone when such dissemination was not authorized by a court order, a Class E felony in violation of Tennessee Code Annotated section 39-13-604(b)(2). The Defendant entered an Alford[1] or best interest plea to attempted dissemination of a cordless telephone transmission, a Class A misdemeanor. The following evidence was presented when the Defendant entered his plea: the Defendant testified that he did not feel that he was guilty of attempted dissemination of a cordless telephone transmission but stated that he decided to enter a guilty plea rather than risk being tried for a greater offense and receiving a harsher sentence. The Defendant testified that he used a scanner and that he recorded a phone conversation between Nancy Bogart, the Chairman of the Unicoi County School Board, and Denise Brown, the Director of Schools in Unicoi County. He explained that, during this phone conversation, the two women threatened to harm Mark Stevens, the editor of the Erwin Record. The Defendant testified that he sent the recording of the phone conversation to Stevens at the Erwin Record. When asked if he would apologize to the two individuals engaged in the conversation that he recorded, the Defendant said, "I owe the Court an apology and [the Assistant District Attorney General] maybe an apology, but I don't – I don't feel like I owe – I think they owe – maybe owe the Unicoi County people and me an apology." The trial court accepted the Defendant's Alford plea to attempted dissemination of a cordless telephone conversation.

---

[1] This type of plea is named after North Carolina v. Alford, 400 U.S. 25 (1970), in which the United States Supreme Court discussed the right of an accused to plead guilty in his best interest while protesting his actual innocence.

At the Defendant's sentencing hearing, the trial court determined that the Defendant's criminal behavior was relevant for sentencing purposes even though the Defendant had never received a conviction for this behavior.

Denise Brown, one of the women tape recorded, read the following statement:

> [The Defendant] has quite a history of harassing the community with telephones and tape recorders. As far back as the early 90's, [the Defendant] has made a habit of calling and taping telephone conversations of co-workers, friends, public officials and others . . . . In 1997, Wayne Morris was charged and plead guilty to harassing two former female workers with the telephone. These ladies had done nothing to him . . . . In 2002, [the Defendant] was charged with telephone harassment for harassing my husband and me. He would hang up if my husband answered the phone and say vulgar, degrading things if I answered . . . .

On cross-examination, Brown acknowledged that, during her phone conversation with Bogart, she threatened to beat up Stevens and that she said, "I'm serious." She acknowledged that someone who heard this conversation might think that she planned to physically harm Stevens.

Nancy Bogart testified that her position with the school board was up for re-election when the Defendant recorded her phone conversation with Brown. She explained that, during this conversation, she indicated that she would accompany Brown while Brown beat up Stevens. She testified that she did not really expect Brown to beat up Stevens and that Brown does not even weigh one hundred pounds. On cross-examination, Bogart testified that, at the time of her recorded phone conversation, she thought that Brown might approach Stevens and talk to him. She acknowledged that someone who listened to her conversation with Brown could reasonably believe that Brown was

-3-

serious. Bogart acknowledged that she filed a civil complaint against the Defendant asking for one hundred thousand dollars in compensatory damages.

Maybelle Duncan Morris, the Defendant's wife, recalled that her husband was charged with using the telephone to harass the Browns. She testified that Lee Brown, Denise Brown's husband, telephoned her and called her various names. She said that she hung up the telephone, Lee Brown called her back, and the Defendant did not allow her to answer the telephone anymore on account of the horrible things that Lee Brown said. Morris said that Lee Brown used the telephone to harass them until 10:00 p.m. and continued to harass them the next day. She said that Lee Brown continued this behavior for a month, and then she and the Defendant had a system put on their telephone that blocked Lee Brown's telephone calls.

On cross-examination, Morris testified that she reported Lee Brown's phone calls to the telephone department but could not recall if she reported these phone calls to the Sheriff's Department. On redirect examination, Morris testified that she advised Deputy Jimmy Erwin that she had received harassing phone calls from Lee Brown. She did not know if Deputy Erwin investigated her accusations against Lee Brown but did know that he investigated the Brown's accusations against her husband.

When sentencing the Defendant the trial court applied the following enhancement factors: (1) that "[t]he defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range," Tennessee Code Annotated § 40-35-

114(2) (2003); and (2) that the "offense involved more than one victim," Tennessee Code Annotated § 40-35-114(3). The trial court stated:

> [T]he court finds that there are in fact two enhancement factors as provided by law. One of them is fairly insignificant, and for that matter the court really will not attach much weight to the criminal behavior that has been testified to and some sort of harassing phone call. But it probably was more relevant to show the bitterness and bad feelings that have gone on between these parties for years, and on this proof we don't know why. It doesn't matter. But the court also finds that the offense also involved more than one victim. Both Ms. Brown and Ms. Bogart are victims in this case . . . . Mitigating factors, you are correct that his criminal conduct neither caused or threatened serious bodily injury. But disseminating a tape, in the scheme of things, that, in the court's opinion is insignificant in mitigation. And there is no strong provocation . . . . The next issue is probation, although some of them have already been addressed. The first factor are circumstances of the offense. That is a factor that weighs against probation. It is a felony that he committed, even though he has been convicted of a misdemeanor. And there's just no excuse for what he did . . . . The next factor to be considered under the law is his present condition, and under the Criminal Sentencing Reform Act, his potential for rehabilitation. And this is where he has massive problems because in the more than thirty years in which I've been practicing and observing criminal courts, this court has never seen as unrepentant, unremorseful, refused to make any apology to the victim, not only says he didn't do anything wrong, but that the citizens of Unicoi County ought to apologize to him for his commission of what is a felony. This is a factor that, in the court's opinion, would carry sufficient weight to just plain deny probation, which would mean he'd serve six (6) months in jail . . . . He doesn't acknowledge that he did anything wrong. He says that the system ought to apologize to him for what he actually did was in commission of a felony, has no apology, no concern for the pain and suffering that he inflicted on these people, for whatever all this bitterness goes back to . . . . And this is a factor that carries a massive amount of weight. I've never seen anyone as unremorseful, unrepentant and refusing to acknowledge that something they did was just pretty low down and dirty . . . .

The trial court sentenced the Defendant to eleven months and twenty-nine days, at fifty percent, with a thirty day period of incarceration to be served prior to release on probation. The Defendant now appeals, contending that the trial court's judgment that the Defendant serve thirty

days in incarceration is contrary to the sentencing guidelines.

## II. Analysis

On appeal the Defendant contends that the trial court improperly applied the principles of the Sentencing Reform Act. Specifically, the Defendant contends that the trial court erred when it sentenced him by considering inappropriate enhancement factors, by failing to consider appropriate mitigating factors, and by refusing to grant him full probation. The State asserts that the trial court properly sentenced the Defendant.

When a defendant challenges the length and manner of service of a sentence, it is the duty of this court to conduct a de novo review of the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ross, 49 S.W.3d 833, 847 (Tenn. 2001); State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing a defendant or to the determinations made by the trial court that are predicated upon uncontroverted facts. State v. Dean, 76 S.W.3d 352, 377 (Tenn. Crim. App. 2001); State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994).

In conducting a de novo review of a sentence, we must consider: (a) any evidence received

at the trial and/or sentencing hearing; (b) the presentence report; (c) the principles of sentencing; (d) the arguments of counsel relative to sentencing alternatives; (e) the nature and characteristics of the offense; (f) any mitigating or enhancement factors; (g) any statements made by the defendant on his or her own behalf; and (h) the defendant's potential or lack of potential for rehabilitation or treatment. See Tenn. Code Ann. § 40-35-210 (2003); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging a sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2003), Sentencing Comm. Cmts.

In the case under submission, the Defendant was convicted of a Class A misdemeanor. In misdemeanor sentencing, the sentence imposed must be specific and consistent with the purposes and principles of the Criminal Sentencing Reform Act of 1989. Tenn. Code Ann. § 40-35-302(b) (2003). The misdemeanant, unlike the felon, is not entitled to the presumption of a minimum sentence. State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). However, in determining the percentage of the sentence to be served in actual confinement, the trial court must consider enhancement and mitigating factors, as well as the purposes and principles of the Criminal Sentencing Reform Act of 1989, and the trial court should not impose such percentages arbitrarily. Tenn. Code Ann. § 40-35-302(d). A lack of specific findings within the record is no basis for holding the trial court in error. State v. Russell, 10 S.W.3d 270, 278 (Tenn. Crim. App. 1999). In sentencing the misdemeanor defendant, the trial court shall fix a percentage of the sentence that the defendant must serve in confinement before being eligible for release into rehabilitative programs. Tenn. Code Ann. § 40-35-302(d); State v. Troutman, 979 S.W.2d 271, 273 (Tenn. 1998).

## A. Application of Enhancement and Mitigating Factors

The Defendant contends that the trial court erred when it enhanced the Defendant's sentence due to the Defendant's prior criminal behavior and because the offense impacted more than one victim. The Defendant also contends that the trial court erred by failing to consider appropriate mitigating factors applicable to the Defendant's case. The State contends that the trial court properly considered enhancement and mitigating factors when it sentenced the Defendant. In our view, the trial court erred when it applied enhancement factor (3), that the offense involved more than one (1) victim. See Tenn. Code Ann. § 40-35-114(3).

Enhancement factors must be "appropriate for the offense" and "not already an essential element of the offense." Tenn. Code Ann. § 40-35-114.

> The obvious purpose of these limitations is to exclude enhancement factors which are not relevant to the offense and those based on facts which are used to prove the offense. Facts which establish the elements of the offense charged may not also be the basis of an enhancement factor increasing punishment. The legislature, in determining the ranges of punishment within the classifications of offenses, necessarily took into account the culpability inherent in each offense.

State v. Jones, 883 S.W.2d 597, 601 (Tenn. 1994), *superceded by statute on other grounds as stated in* State v. Carico, 968 S.W.2d 280, 288 (Tenn. 1998). Sentence enhancement factors can not be based on facts which are used to prove the offense or facts which establish the offense charged. State v. Poole, 945 S.W.2d 93, 95-6 (Tenn. 1997).

In the case under submission, the trial court erred when it applied enhancement factor (3) to the Defendant's sentence because that factor involved an element of the offense. The Defendant pled guilty to attempting to violate Tennessee Code Annotated section 39-13-604(b)(2), which states that: "A person commits an offense who intentionally disseminates a communication transmitted between two (2) cordless telephones or a cordless telephone and a landline telephone if such dissemination is not authorized by a court order." Disseminating a communication between two telephones is an activity that by its vary nature involves more than one victim. Because disseminating a communication that occurs between two people serves as the basis for the offense, two victims are automatically involved in the offense, and enhancement factor (3) is not applicable in this case.

The trial applied enhancement factor (2) to the Defendant's sentence because it found that the Defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. The record reflects that the Defendant has a prior conviction that was expunged and that Brown testified about previous instances in which the Defendant "harassed" people while using the telephone. Although the trial court attributed very little weight to this enhancement factor, we conclude that the trial court correctly considered this factor.

**B. Denial of Probation**

The Defendant contends that the trial court erred when it refused to grant him full probation.

-9-

A defendant is eligible for alternative sentencing if the sentence actually imposed is eight years or less. Tenn. Code Ann. § 40-35-303(a) (2003). Although probation must be considered, "the defendant is not automatically entitled to probation as a matter of law." Tenn. Code Ann. § 40-35-303(b). In determining whether to grant or deny probation, the trial court may consider the following: the circumstances of the offense; the defendant's criminal record; background and social history; the defendant's physical and mental health; the deterrent effect on other criminal activity; and the likelihood that probation is in the best interests of both the public and the defendant. State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). The Defendant bears the burden of establishing suitability for probation. Tenn. Code Ann. § 40-35-303(b); Ashby, 823 S.W.2d at 169. Sentences involving confinement should be based upon the following considerations:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103 (2003). Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. See Tenn. Code Ann. § 40-35-103(2),(4). The court should also consider the defendant's potential for rehabilitation or treatment in determining the appropriate sentence. See id. § 40-35-103(5). The Act goes further and lists the type of evidence that trial courts should consider when imposing sentences.

See Tenn. Code Ann. § 40-35-210(b).  Section 210(b) states that:

> (b) To determine the specific sentence and the appropriate combination of sentencing alternatives that shall be imposed on the defendant, the court shall consider the following:
> (1) The evidence, if any, received at the trial and the sentencing hearing;
> (2) The presentence report;
> (3) The principles of sentencing and arguments as to sentencing alternatives;
> (4) The nature and characteristics of the criminal conduct involved;
> (5) Evidence and information offered by the parties on the enhancement and mitigation factors in §§ 40-35-114 and 40-35-114; and
> (6) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

The trial court retains the authority to place the defendant on probation either immediately or after a time of periodic or continuous confinement.  See Tenn. Code Ann. § 40-35-210(b).

In the case under submission, the record demonstrates that the trial court improperly appplied one of the two enhancement factors that it considered.  Further, we respectfully disagree with the trial court's decision to attribute great weight to the Defendant's failure to apologize to the victims. In our view, the Defendant's statements do not reflect the callousness that the trial court attributed to his words.  The Defendant may have refused to apologize to the victims in order to protect himself against the pending civil suit against him.  The trial court misunderstood the Defendant's response, attributing to him hostility towards the Unicoi County community and the criminal justice system itself, which may not have been intended by the Defendant.  The Defendant acknowledged that he owed the court and maybe the Assistant District Attorney apologies, but stated that he felt that Bogart and Brown owed him and the people of Unicoi County an apology, presumably for threatening Stevens.

-11-

Under these circumstances, the Defendant's unwillingness to apologize is a factor of little consequence in the probation determination. As previously discussed, the Defendant stated that he did not believe that he was guilty of the crime charged but pled guilty to attempted dissemination of a cordless telephone transmission in order to avoid harsh sentencing. The Defendant's refusal to apologize to the victims and his assertion of innocence during his best interests plea colloquy should not be used to presuppose, as the trial court did, that the Defendant lacks potential for rehabilitation. See State v. William Blaine Campbell, No. E1999-02208-CCA-R3-CD, 2000 WL 1449875, at *3 (Tenn. Crim. App., at Knoxville, Sept. 29, 2000) (questioning the propriety of using the defendant's assertion of innocence at the time of entering an Alford plea as a basis for denying probation), *perm. app. denied* (Tenn. Apr. 24, 2001). The trial court continually stated that the Defendant's failure to apologize to the victim significantly affected its decision to sentence the Defendant to thirty days of incarceration. In our view, the nature and the circumstances of the offense are not sufficient to deny a sentence of total probation. The Defendant committed a non-violent offense and stated that he did so in order to warn Marks about the threats being made against him in the recorded conversation. Furthermore, the record before this Court does not reflect the Defendant's possession of a criminal history evincing a clear disregard for the laws and morals of society, and it does not reflect a failure of past efforts at rehabilitation. In our view, after considering the totality of circumstances in the case under submission, the Defendant has sufficiently established suitability for full probation.

The following reasoning stated in State v. Ashby, 823 S.W.2d 166, 171 (Tenn. 1991) is helpful to understanding the case under submission:

It is not the policy or purpose of this Court to place trial judges in a judicial straight-jacket in this or any other area, and we are always reluctant to interfere with their traditional discretionary powers. However, ours is the task of affording a meaningful review; and where the effect of sustaining the denial of a probation would be to defeat the public policy of the state by placing it within the power of a trial judge to deny probation on a basis outside statutory criteria, and without valid reasons, we are left with no choice but to intervene and act in furtherance of the legislative intent embraced in the statutes relating to probation.

Based on our review, we conclude that a sentence of full probation will serve the ends of justice and is in the best interest of the Defendant and the public.

### III.  Conclusion

For the reasons stated above, we concluded that the trial court erred when it denied the Defendant a sentence of full probation. We therefore reverse the judgment of the trial court and sentence the Defendant to eleven months and twenty-nine days on probation with the same terms and conditions of probation as imposed by the trial court. We remand this case to the criminal court for Unicoi County for the entry of a judgment of conviction and sentence in accordance with this opinion.

_____

ROBERT W. WEDEMEYER, JUDGE