FOR PUBLICATION

IN THE SUPREME COURT OF TENNESSEE

AT KNOXVILLE

F L E D

December 29, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

STATE OF TENNESSEE,    (

      (

    Plaintiff-Appellee,   (

      ( Hawkins Criminal

      (

      ( Hon. James E. Beckner,

v.      ( Judge

      (

      ( S. Ct. No. 03S01-9610-CR-0009

      (

WILLIAM JEFFERY CARICO,   (

      (

    Defendant-Appellant.  (

For Plaintiff-Appellee:       For Defendant-Appellant:

W. Knox Walkup       Burkett C. McInturff
Attorney General & Reporter  Kingsport
Nashville

Michael E. Moore
Solicitor General
Nashville

Michael W. Catalano
Associate Solicitor General
Nashville

Berkeley Bell
District attorney General
Greeneville

Doug Godbee
Assistant Attorney General
Rogersville

## **O P I N I O N**

JUDGMENT OF TRIAL COURT AND
COURT OF APPEALS AFFIRMED.          REID, J.

      The application for permission to appeal from the

conviction of aggravated rape and a Range I sentence of 25 years was granted in part, to consider two of the several issues decided by the Court of Criminal Appeals, which affirmed the conviction and the sentence. In those issues, the appellant insists that the delay in initiating the prosecution was a violation of his constitutional rights to a speedy trial and due process and that the sentence imposed is excessive. The conviction and the sentence are affirmed.[1]

**I**

In May 1980, the victim's mother married the appellant, William Jeffery Carico, and they all began living together as a family. In May 1985, the victim, who then was 10 years of age, told her school teacher that during the preceding year the appellant on numerous occasions had fondled her breasts and genitalia, digitally penetrated her vagina, forced her to perform fellatio on him and committed other sexual acts upon her.

This information was given by the school officials to the Department of Human Services (DHS), which made an investigation. The DHS employee testified that she "substantiated" the allegations made by the victim and reported the results of her investigation to the district

---

[1]The decision of the Court of Criminal Appeals on all other issues is affirmed without discussion.

attorney general.  Before any further action was taken by State officials, the victim recanted her statement and explained the acts she had reported were, in fact, dreams. There was no prosecution at that time.

According to the proof, the appellant committed no sexual acts upon the victim after 1985.

In 1991, the victim renewed the allegations by reporting them to her natural father.  The appellant admitted to his wife that the child's statements were true and he voluntarily obtained counseling.

An arrest warrant was issued on September 3, 1992. An indictment was returned on January 11, 1993.  The trial began on February 24, 1993 and concluded the next day.

The indictment, in relevant part, charged: "That William Jeffery Carico on or about the _____ day of July 1983 . . . and before the finding of this indictment, did unlawfully commit the offense of aggravated rape . . . ."  The appellant filed several motions to dismiss, including a motion asserting the delay in initiating prosecution was a violation of the constitutional rights to due process and a speedy trial.[2]

---

[2] The appellant claims violations of both the federal and state constitutions:

In response to a motion for a bill of particulars, the State stated: "The State would allege the offense occurred

---

United States Constitution

Fifth Amendment:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment by a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself; nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

Sixth Amendment:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

Fourteenth Amendment, Section 1:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Tennessee Constitution

Article I, Section 8:

That no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land.

Article I, Section 9:

That in all criminal prosecutions, the accused hath the right to be heard by himself and his counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof, to meet the witnesses face to face, to have compulsory process for obtaining witnesses in his favor, and in prosecutions by indictment or presentment, a speedy public trial, by an impartial jury of the County in which the crime shall have been committed, and shall not be compelled to give evidence against himself.

on the _____ day of January, 1985, on a Sunday at the residence of the defendant, a white house in Church Hill, Hawkins County, Tennessee."

At trial, the appellant denied the allegations of sexual conduct and explained he made the incriminating admissions in an effort to maintain his marriage.

The jury found the appellant guilty of aggravated rape. The trial court found five enhancement factors applicable and imposed the maximum sentence of 25 years. Tenn. Code Ann. § 40-35-112(a)(1) (1990).

The Court of Criminal Appeals affirmed the conviction and, after finding two of the enhancement factors not applicable, nevertheless, affirmed the sentence.

**II**

Although the appellant asserts the violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 8 and 9 of the Tennessee Constitution, his argument essentially is based on the length of the time between the commission of the offense and the trial. He does not address separately the issues of speedy trial under the Sixth Amendment and Article I, Section 9 and due process under the Fifth and Fourteenth Amendments and

Article I, Section 8. The important distinction between the issues of speedy trial and due process was noted in <u>State v. Gray</u>, 917 S.W.2d 668, 671 (Tenn. 1996) (quoting <u>State v. Dykes</u>, 803 S.W.2d 250, 255 (Tenn. Crim. App. 1990)), where this Court stated that in Tennessee the law is well settled that "delay between the commission of an offense and the commencement of adversarial proceedings does not violate an accused's constitutional right to a speedy trial," but an unreasonable delay between the commission of the offense and the commencement of the prosecution may violate the constitutional right to due process. Consequently, in determining if there has been a violation of the constitutional right to a speedy trial, only the time between the commencement of adversarial proceedings and the commencement of the trial will be considered; while, in determining if there has been a violation of constitutional due process, the time between the commission of the offense and the commencement of prosecution will also be considered.

In the case before the Court, the arrest warrant was issued September 3, 1992, the indictment was returned January 11, 1993, and the trial began on February 24, 1993. The elapse of less than six months from arrest to trial does not violate the right to a speedy trial. See <u>Doggett v. United States</u>, 505 U.S. 647, 112 S. Ct. 2686, 2691 n. 1 (1992); <u>State v. Bishop</u>, 493 S.W.2d 81, 85 (Tenn. 1973).

However, the delay of more than seven years from the time the offense was reported to the Department of Human Services until the prosecution was commenced does implicate the constitutional right of due process and requires an analysis of the circumstances upon which the appellant relies for relief.

In State v. Gray, a case in which the State had no knowledge of the offense until 42 years after the offense was committed, the Court declined to follow the three-prong test utilized by the Court of Criminal Appeals in State v. Dykes. State v. Gray, 917 S.W.2d at 672. The Court in Gray rejected the finding in Dykes that one essential condition for relief is that the State caused the delay. The Court stated:

> Today we articulate a standard by which to evaluate pre-accusatorial delay and hold that an untimely prosecution may be subject to dismissal upon Fifth and Fourteenth Amendment due process grounds and under Article I, §§ 8 and 9, of the Tennessee Constitution even though in the interim the defendant was neither formally accused, restrained, nor incarcerated for the offense. In determining whether pre-accusatorial delay violates due process, the trial court must consider the length of the delay, the reason for the delay, and the degree of prejudice, if any, to the accused.

Id. at 673. The Court found that the delay of 42 years was "profoundly excessive," that there was no reasonable explanation for the delay, and that the defendant had made a

prima facie showing of prejudice.  The Court in Gray dismissed the prosecution even though the State had no knowledge of the offense and was in no way responsible for the delay.

The factors deemed determinative in Gray - the length of the delay, the reason for the delay, and the effect of the delay on the rights of the accused - applied to the facts and circumstances of this case, do not show a violation of the appellant's right to due process.

The circumstance most favorable to the appellant's claim for relief is the length of the delay.  Seven years perhaps is not "profoundly excessive" as in Gray, but it is sufficient to require a careful review of the cause and results of the delay.[3]  Even though the State had knowledge of "substantiated" allegations of criminal acts committed by the appellant in 1985, the State was not responsible for the delay in prosecution.  The only evidence available to the State was the testimony of the 10 year old victim.  When the victim recanted the charges and, apparently with the approval if not the encouragement of her mother, attributed her account of the sexual conduct to her dreams, the State had no available

---

[3]As stated in Gray, a statute of limitations normally is the primary safeguard against infringement upon due process resulting from long delays. Id. at 672 (citing United States v. Marion, 404 U.S. 307, 321-23, 92 S. Ct. 455, 464 (1971)).  In this case, as in Gray, there was no statute of limitations for aggravated rape when the offense was committed.  The legislature has since enacted a statute limiting the time within which prosecution for aggravated rape of a child must be commenced to the latter of four years after the commission of the offense or the date the child attains the age of majority.  Tenn. Code Ann. § 40-2-101(d) (1990).

evidence on which to proceed.  Even though under Gray the State need not have caused the delay or even had knowledge of the criminal acts, the State's conduct is an important factor in determining if there has been a violation of due process.

The third factor, and the most important though not determinative in every case, is prejudice to the accused.[4] None of the problems often associated with delayed prosecution are present in this case.  The victim's testimony regarding the event on which the conviction is based was not uncertain or evasive.  Instead it was forthright, precise, and credible. The act itself was described in definite and accurate terms. She was sufficiently mature at the time to understand and remember the events.  In fact, it was the clear and persistent memory of the acts which continued to plague her that caused the renewal of the charges.  The place and date of the event were identified as the residence on a Sunday in January soon after the Christmas at which she was given a Barbie doll. Though not the required standard, the victim's testimony was clear and convincing.

The appellant does not contend that he was denied the benefit of witnesses who since have become unavailable.

---

[4]In Doggett v. United States, 505 U.S. 647, 112 S. Ct. 2686 (1992), the United States Supreme Court commented that "time's erosion of exculpatory evidence and testimony 'can rarely be shown.'"  Id. at 656, 112 S. Ct. at 2692-93, and further, "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify."  Id.  Even though Doggett was a speedy trial case, the statements made by the court are relevant to any case in which there is excessive delay.

The only prejudice claimed is that because the State did not respond promptly to his motion for a bill of particulars, he was unable to prove where he was on the date the offense occurred. There was no showing on the motion for a new trial that he could have offered proof inconsistent with the victim's testimony. Actually, his own admissions, though recanted at trial, confirm the truthfulness of the victim's testimony.[5] The conclusion is that the appellant has failed to demonstrate that he was prejudiced by the delay in initiating the prosecution.

In summary, although the delay in initiating adversarial proceedings against the appellant was excessive, it was not so long that the delay alone entitles the appellant to relief. In addition, the delay was not caused by any inappropriate conduct by State agents and the appellant has not shown that his rights were prejudiced by the delay. Consequently, there was no denial of due process.

**III**

The appellant insists that the sentence of 25 years is excessive. Since the offense occurred prior to 1989 and the sentence was imposed subsequent to 1989, the trial court was required to calculate the proper sentence under both the

---

[5]The sufficiency of the indictment and the admissibility of the appellant's admissions were disposed of by the decision of the Court of Criminal Appeals.

1982 and the 1989 sentencing acts and then impose the least severe sentence. State v. Pearson, 858 S.W.2d 879, 884 (Tenn. 1993). At the time the offense in this case occurred, January 1985, aggravated rape was a class X felony which carried a range of punishment of 20 years to life. Tenn. Code Ann. § 39-2-603(b) and (c) (1982). In calculating a sentence under the 1982 Act, a life sentence was "presumed to be sixty (60) years." Tenn. Code Ann. § 40-35-109(d) (1982). Because the defendant qualifies as a Range I offender under the 1982 Act, his sentence range under that Act would be 20 to 40 years. Tenn. Code Ann. § 40-35-109(a) (1982). Pursuant to Tenn. Code Ann. § 40-35-118 (1997), an aggravated rape committed prior to November 1, 1989 is classified as a class A felony for 1989 sentencing purposes. The defendant qualifies as a standard offender and would be sentenced as a Range I offender under the 1989 Act. Therefore, his possible range of punishment would be 15 to 25 years. Tenn. Code Ann. § 40-35-112(a)(1) (1997). The trial court properly found that the 1989 Act was applicable and that the sentence range was 15 to 25 years. The trial court sentenced the defendant as a Range I offender to the maximum sentence of 25 years. Tenn. Code Ann. § 40-35-118 and 40-35-112(a)(1) (1990).

The trial court found the evidence established five enhancement factors, Tenn. Code Ann. § 40-35-114(1), (6), (7), (15), and (16) (1990), and found no mitigating factors.

The Court of Criminal Appeals concluded that the evidence supports only three of the enhancement factors - (1) the defendant has a previous history of criminal convictions or criminal behavior, (7) the offense was committed to gratify the defendant's desire for pleasure or excitement, and (15) the defendant abused a position of private trust. It rejected enhancement factors (6), the personal injuries inflicted on the victim were particularly great, and (16), the crime was committed under circumstances under which the potential for bodily injury was great. The Court of Criminal Appeals, nevertheless, found that the three enhancement factors justified a sentence of 25 years and affirmed the judgment of the trial court.

The standard of review is de novo with a presumption of correctness. Tenn. Code Ann. § 40-35-402(d) (1990); State v. Ashby, 823 S.W.2d 166, 167 (Tenn. 1991).

The Court of Criminal Appeals correctly concluded that the evidence does not support enhancement factors (6) and (16), which relate to personal injury. The acts committed did not pose great potential for bodily injury nor were the personal injuries inflicted upon the victim particularly great. The act of fellatio for which the appellant was convicted, and some of the enhancing criminal acts,[6] were accompanied by force, but the evidence did not show that the

---

[6]Supra at _____. [Slip op. at 2.]

victim, though not a willing participant, sustained appreciable personal injuries beyond those incidental to the crime of aggravated rape.

The Court of Criminal Appeals also correctly found that the evidence supports enhancement factors (7) and (15). There can be no question that the rape of a child residing in the family is an abuse of private trust. State v. Adams, 864 S.W.2d 31, 34 (Tenn. 1993). Even though this Court has observed that not all rapes are committed for the purpose of pleasure or excitement, id. at 34-35, the facts of this case indicate clearly that the act upon which the conviction is based was motivated by the desire for sexual pleasure.

Two issues remain - whether the record supports the finding of enhancement factor (1) and whether the sentence of 25 years is appropriate.

The trial court found that evidence of acts committed upon the victim by the appellant other than the specific act on which the conviction is based, is proof of criminal behavior within the meaning of enhancement factor (1). Since this Court has not previously considered this issue, the constitutional aspects of the matter should be considered first.

The United States Supreme Court has held that the

-13-

Sixth and Fourteenth Amendments to the United States Constitution do not prohibit a sentencing court from considering a defendant's previous criminal behavior which does not result in conviction.  The origin of this holding is found in the case of Williams v. New York, 337 U.S. 241, 69 S. Ct. 1079 (1949).[7]  In Williams, the Court affirmed the trial court's decision to consider evidence from a pre-sentence report of the defendant's past criminal behavior including his commission of burglaries not resulting in conviction and his activities indicating a "morbid sexuality."  Id. at 244, 69 S. Ct. at 1081.  Justice Black, delivering the opinion of the Court, wrote:

> A sentencing judge . . . is not confined to the narrow issue of guilt.  His task within fixed statutory or constitutional limits is to determine the type and extent of punishment after the issue of guilt has been determined.  Highly relevant - if not essential - to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics.

Id. at 247, 69 S. Ct. at 1083.

Black continues:

---

[7]See also United States v. Watts, _____ U.S. _____, 117 S. Ct. 633 (1997); United State v. Shumway, 112 F.3d 1413, 1428 (10th Cir. 1997); United States v. Chatlin, 51 F.3d 869, 873 (9th Cir. 1995) (citing several cases to support its holding that the Sentencing Guidelines allow a trial court to grant an upward departure based on repetitive criminal conduct not resulting in a conviction).

> The due-process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of trial procedure. So to treat the due-process clause would hinder if not preclude all courts - state and federal - from making progressive efforts to improve the administration of criminal justice.

Id. at 251, 69 S. Ct. at 1085. In McMillan v. Pennsylvania, 477 U.S. 79, 106 S. Ct. 2411 (1986), the Supreme Court considered the standard of proof to which the State must be held in admitting evidence during the sentencing phase. The Court rejected the petitioner's claim that the due process clause requires the "clear and convincing evidence" standard in the sentencing phase and affirmed the trial court's decision to consider evidence that the defendant possessed a firearm during the commission of the offense under the preponderance standard. Id. at 91, 106 S. Ct. at 2419. Likewise, the Court of Criminal Appeals has held that "[t]he constitutional rights that attach in a case prior to conviction are much broader than those which attach in a sentencing scheme or hearing." State v. Newsome, 798 S.W.2d 542, 543 (Tenn. Crim. App. 1990); cf. State v. Mackey, 553 S.W.2d 337, 344-45 (Tenn. 1977). These federal and state decisions recognize that the trial court may utilize criminal behavior shown by a preponderance of the evidence to enhance a sentence without violating federal or state due process.

The decision of this Court in State v. Hale, 840

S.W.2d 307, 313 (Tenn. 1992), which was based on Article I, Section 8 of the Tennessee Constitution, does not support the appellant's claim for relief. In <u>Hale</u>, the Court found that the crime of first degree murder could not include as an <u>element of the offense</u> prior incidents of child abuse for which the defendant had not been convicted. The Court held that the use of such prior criminal offenses violates due process guaranteed by the Tennessee Constitution, because "such an inquiry by a jury can[not] be accompanied by sufficient safeguards to ensure that a finding of guilt of prior allegations of abuse is not tainted by the fact of a child's death." That constitutional problem does not exist here. The statute excludes from consideration at the sentencing hearing evidence of the "essential elements of the offense" and evidence "necessary to establish the appropriate range" of punishment. Tenn. Code Ann. §§ 40-35-114, 40-35-114(1). In this case, evidence of the appellant's previous criminal behavior was not probative of an essential element of the offense or the range of punishment. Consequently, the admission of evidence of the sexual acts - other than the January 1985 incident of fellatio for which the defendant was convicted - did not violate the appellant's right to due process under the federal or state constitution or the statute.

The next issue is whether these prior acts of sexual conduct, for which there has been no criminal

conviction, constitute "criminal behavior." The Court of Criminal Appeals has properly held that merely being arrested or charged with a crime is not "criminal behavior" within the meaning of the statute. State v. Buckmeir, 902 S.W.2d 418, 424 (Tenn. Crim. App. 1995); State v. Marshall, 870 S.W.2d 532, 542 (Tenn. Crim. App. 1993). The phrase "criminal behavior" has not been defined by this Court for purposes of the enhancement factor, but, whatever the precise definition may be, sexual acts with a 10 year old child clearly constitute criminal behavior. The evidence of the appellant's prior sexual acts was properly considered by the trial court as criminal behavior. That evidence supports the finding that enhancement factor (1) was established in this case.

There remains the matter of the appropriate sentence. In reviewing this issue, an appellate court must follow the procedure mandated by the Act and prior decisions. "The Act, in order to accomplish its 'foremost purpose,' which is to 'promote justice,' provides that the sentence imposed must be the least severe necessary to achieve the punishment justly deserved, to assure fair and consistent treatment of all defendants, to prevent crime, and to promote respect for the law." State v. Ashby, 823 S.W.2d at 168.

> The nature and extent of the punishment to be imposed for similar offenses committed by similar offenders has been determined by the classification of offenses according to their seriousness and the classification of

> offenders according to their prior
> convictions.  The only discretion allowed
> the sentencing court is to accommodate
> variations in the severity of the
> offenses and the culpability of the
> offenders within the ranges of penalties
> set by the legislature.  Even this
> discretion is restrained under the Act
> through the establishment of a
> "presumptive sentence" and the mandatory
> use of enhancing and mitigating factors.

State v. Jones, 883 S.W.2d 597, 601 (Tenn. 1994).  Under the Act, then, the court must first determine the applicable classification and range of punishment established by the legislature, which for aggravated rape, classified as a Range I offense, is 15 to 25 years. Tenn. Code Ann. §§ 40-35-118; 40-35-112(a)(1)(1990).  Where there are both enhancement factors and mitigating factors, the Act requires that the court start at the minimum sentence in the range,[8] enhance the sentence within the range as appropriate for the enhancement factors, and reduce the sentence within the range as appropriate for the mitigating factors.  Tenn. Code Ann. § 40-35-210(e) (1990).  "The sentence imposed cannot exceed the minimum sentence in the range unless the State proves enhancement factors."  State v. Jones, 883 S.W.2d at 601. Furthermore, the Act specifically sets forth the principles which must govern the imposition of a sentence:

---

[8]In 1995, Tenn. Code Ann. § 40-35-210(c) was amended to provide that for a Class A felony such as aggravated rape, the presumptive sentence is the midpoint of the range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c) (Supp. 1996).  Prior to 1995, the presumptive sentence was the minimum sentence in the range.

(1) Sentences involving confinement should be based on the following considerations:

    (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

    (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

    (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant;

(2) The sentence imposed should be no greater than that deserved for the offense committed;

(3) Inequalities in sentences that are unrelated to a purpose of this chapter should be avoided;

(4) The sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed;

(5) The potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed. . . .

(6) Trial judges are encouraged to use alternatives to incarceration that include requirements of reparation, victim compensation and/or community service.

Tenn. Code Ann. § 40-35-103 (1990). "Finally, the

appropriate sentence is one which is 'justly deserved in relation to the seriousness of the offense,' is 'fair and consistent [with other similar cases],' and 'prevent[s] crime and promote[s] respect for the law.'" State v. Jones, 883 S.W.2d at 600 (quoting Tenn. Code Ann. § 40-35-102 (1990); State v. Ashby, 823 S.W.2d at 168.

As previously discussed, the record shows three enhancement factors in this case - (1) the defendant has a previous history of criminal behavior, (7) the offense was committed to gratify the defendant's desire for pleasure or excitement, and (15) the defendant abused a position of private trust. Neither the trial court nor the Court of Criminal Appeals found any mitigating factors, and the facts and circumstances shown in the record do not support any statutory mitigating factor.

A majority of the Court, Chief Justice Anderson and Justices Drowota and Holder affirm the decision of the Court of Criminal Appeals that the three valid enhancement factors, in the absence of any mitigating factors, justify the maximum sentence of 25 years imposed by the trial judge.

A minority of the Court composed of Justices Birch and Reid would find that the following circumstances constitute non-statutory mitigating factors which would require that the sentence be reduced to 20 years. The

appellant has no prior criminal convictions. His only criminal acts were those committed against the victim over a period of less than two years. Those acts ceased soon after the victim first complained, and the appellant and the victim thereafter lived in the same household without further incidents for several years. He voluntarily reported the criminal acts in an effort to obtain professional help and to maintain his family. The appellant has a college degree, he had good employment and has adequately supported his family. He was at the time of trial an officer in the National Guard, and he has been active in civic, church, and community activities. It appears that, except for the acts committed against his stepdaughter, he has been a productive and law abiding citizen.

The three enhancement factors, though not elements of the offense, are closely related to the offense. The prior criminal behavior involved acts similar to that for which the appellant was convicted and were directed at the same victim. Those same acts establish the second enhancement factor, the desire for pleasure or excitement and they also constitute the third enhancement factor, the breach of a private trust. Two of the enumerated principles of sentencing are implicated by these circumstances. It does not appear that prolonged confinement will be necessary to protect society against further criminal conduct. The appellant apparently did not constitute a risk to children outside the family, and he

refrained from further acts against the victim even while there appeared to be no threat of criminal prosecution.

The conviction and sentence of 25 years are affirmed, and the case is remanded to the trial court.

Costs are taxed to the defendant.

_____
Reid, J.

Concur:

Anderson, C.J., Drowota, and Holder, JJ.
Birch and Reid, Dissenting in Part.