IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 1, 2012

## STATE OF TENNESSEE v. SERENA CARTER

**Appeal from the Criminal Court for Shelby County**
**No. 06-09508     W. Otis Higgs, Jr., Judge**

_____

**No. W2011-01275-CCA-R3-CD  - Filed September 17, 2012**

_____

Defendant-Appellant, Serena Carter, appeals the Shelby County Criminal Court's imposition of a twenty-five-year sentence for facilitation of first degree felony murder. The sole issue presented for our review is whether the sentence imposed by the trial court was excessive. Upon our review of the record, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and D. KELLY THOMAS, JR., JJ., joined.

Lance R. Chism (on appeal) and James Thomas (at trial), Memphis, Tennessee, for the Defendant-Appellant, Serena Carter.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Nicole Germain, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

Carter was originally indicted, along with co-defendant, Elliot Fullilove,[1] for first degree felony murder and especially aggravated robbery stemming from the bludgeoning

_____

[1] State v. Elliot Fullilove, No. W2009-01113-CCA-R3-CD, 2010 WL 4538122, at *1 (Tenn. Crim. App., at Jackson, Nov. 2, 2010)(affirming co-defendant's conviction and life sentence for first degree felony murder and noting that defendant Fullilove told authorities that "[The offense] wasn't my idea. I didn't know [the] dude. Serena had called him. Our intentions was robbing him."). We also note that on direct appeal Mr. Fullilove's first name was spelled "Elliot," but in our record it appears as "Elliott."

death of John Ardrey, the victim in this case. On April 1, 2011, Carter pleaded guilty to the lesser included offenses of facilitation of first degree felony murder and facilitation of especially aggravated robbery. On May 6, 2011, she was sentenced to concurrent terms of twenty-five and twelve years, respectively. Carter then filed this timely appeal.

At the guilty plea colloquy, Carter stipulated that on June 2, 2006, she and her co-defendant, Elliot Fullilove, met with the victim for the purpose of robbing him. While at a hotel in Memphis, Tennessee, the co-defendant beat the victim several times over the head with a sawed-off shotgun resulting in the victim's death. Carter was in the bathroom during the beating. Carter and her co-defendant then left in the victim's car. The co-defendant was found in that vehicle, which contained some of Carter's belongings, approximately two weeks later.

At the sentencing hearing, the State recited the facts supporting the offense and admitted various photographs of the crime scene. The photographs showed a hotel room with the victim's body covered in blood. Everything in the room appears to be soaked in blood, including the carpet, a heating unit, and the mattress of the bed. The walls of the room are also covered with blood spatter. After the trial court referred to Carter's statement detailing her involvement with the offense, the State provided the court with a copy of the statement for its consideration.[2] The statement provided, in pertinent part, the following:

[Question]: On Friday, June 2, 2006, Jonathan Ardrey was found dead inside his hotel room at 3456 Lamar (Deluxe Inn). Are you the person responsible for his death?

[Answer]: No.

[Question]: Do you know who is responsible for his death?

[Answer]: Yes. Elliott Fullilove.

[Question]: Were you present when Elliott Fullilove killed Jonathan Ardrey?

[Answer]: Yes.

[Question]: Who else was present when this occurred?

---

[2] Carter's statement was not admitted as an exhibit to the sentencing hearing. However, on November 11, 2011, this court granted Carter's motion to supplement the record with her statement and the presentence report.

[Answer]: Brianna Carter.

[Question]: Who is Brianna Carter?

[Answer]: My daughter.

[Question]: Did you see the incident occur?

[Answer]: No.

[Question]: If you were present, why did you not see the incident?

[Answer]: I was in the bathroom.

[Question]: Where was Brianna?

[Answer]: In the bathroom.

[Question]: Did you know the victim, Jonathan Ardrey?

[Answer]: Yes.

. . .

[Question]: How long have you known the victim and what is his relationship to you?

[Answer]: About a year.  He is a friend.

. . .

[Question]: How long have you know[n] [Fullilove] and what is his relationship to you?

[Answer]: Six months.  He is my boyfriend.

. . .

[Question]: Can you tell me in your own words what happened after you go to the hotel?

[Answer]: Me and my baby went straight to the bathroom. We stayed in there and they was talking. And [the victim] used the phone and then [Fullilove] hit him. I guess that was the first lick. Then apparently he kept hitting him and then . . . after some time the gun went off. Then the smoke detector went off. . . . [Fullilove] told us to go to the car. We went to the car, sat in the car probably about five minutes and then he came out and we left.

. . .

[Question]: Who had the shotgun?

[Answer]: [Fullilove].

[Question]: Do you know why [Fullilove] had a shotgun there?

[Answer]: He ha[d] plans to rob him.

[Question]: Is that why you called [the victim] in the first place?

[Answer]: Yes.

. . .

[Question]: What was taken from [the victim]?

[Answer]: A briefcase, a duffle bag and money and his car.

[Question]: When you walked out of the bathroom, where was [the victim]?

[Answer]: He was sitting up against the bed.

[Question]: Could you see any injuries?

[Answer]: I just seen a lot of blood.

[Question]: Was he alive when you left the hotel?

[Answer]: Yes, because he had moved.

[Question]: What do you mean?

-4-

[Answer]: Because he went from the bed to a night stand where the phone was at. Maybe he just fell over that way.

. . .

[Question]: When did you find out that [the victim] was deceased?

[Answer]: Today.

[Question]: Where has the car been since this robbery?

[Answer]: In Marion.

[Question]: Have [you] all been driving it around?

[Answer]: He has.

The State further argued that "but for [Carter's] actions [the victim] would be walking around Memphis today." Although the State did not reference any enhancement factors, it requested that the trial court impose the maximum sentence of twenty-five years. The State also requested consecutive sentencing based on the seriousness of the offense.

Defense counsel advised the court that Carter was relying on the presentence report. The presentence report showed that Carter was twenty-six years of age, had completed the eleventh grade, and had earned her general education diploma (GED) in 2005. Carter's statement regarding the offense, as recorded in the presentence report, provided as follows:

I cannot say that I had no part in the offense because by not calling the police I became responsible for everything that happened. I am truly sorry about what happened. I have learned a lot in the five years I've been incarcerated. I now know just how much everything I do affects everyone. I am now more aware of that fact that there are consequences behind every action and decision I make. I would just like a second chance to get everything right because I know I can do it.

The report showed that Carter had one prior misdemeanor conviction for theft of property valued under $500 and one juvenile adjudication for theft of property. Carter also reported to investigators that she had participated in programs such as job readiness and anger management while incarcerated for this offense.

Defense counsel stressed that Carter had a minimal criminal history, had a young daughter, had accepted responsibility for the offense, and had been incarcerated on this offense for five years. Counsel said, however, that it was "undisputed" that Carter "didn't kill anyone" and that "she was in the bathroom when [the offense] occurred[.]" He said Carter "made a terrible mistake[,]" but she could be "salvaged."

After hearing arguments of counsel, the trial court provided lengthy oral findings of fact regarding Carter's sentence. The trial court stated, in pertinent part, the following:

> I remember this case well. This case was a very interesting case to say the least. My main concern, of course, is the culpability of the defendant. . . .
>
> According to the proof, as I understand it, she was with this gentleman when the robbery was planned and they made contact with the victim for the specific purpose of robbing him. I'm not certain that they or she participated in a discussion about killing him. But that was a consequence of this particular meeting and planning and conspiracy.
>
> Her testimony, of course, in her statement what her statement was that when she arrived at the hotel room she immediately went into the bathroom with her daughter. She said with her child, they went to the bathroom. I guess the trip to the bathroom, [S]tate, is an effort to remove herself from the difficulty. The trip to the bathroom has its purpose. The removal of her from culpability. The removal of her person from the difficulty.
>
> I'm not certain that you can plan a robbery and plan the outcome and participate in the planning and secure the presence of a victim at the hotel room and isolate yourself from the events by going to the bathroom. . . .
>
> Well, let's assume for the moment that she went to the bathroom and when the deed was being done she, of course, according to her statement, she overheard it. She overheard the gunshot. The deed is now done, she's in the bathroom shielding herself from the events taking place in a hotel room by staying in the bathroom. But she came out. And when she came out of the bathroom the dead body was there. She did not remove herself from the scene of difficulty or call he police or try to run or escape. . . .
>
> So I would submit this for purposes of this sentencing hearing that she was responsible or at least participated in this situation to the extent that she

became responsible for the acts of the defendant who did plead guilty, who did receive a life sentence.

I'm not sure I would agree with [defense counsel] that this calls for mitigation. A twenty percent mitigating offense. I personally I think it would send a bad signal to the community if a man can be killed in a hotel room and to the extent that she participated we interpret it as a mitigated offense. I'm just not sure that that would be the proper way to interpret these facts.

. . .

It is a conscious disregard for a human life and for the taking of human life. This was a senseless killing in this case. Just senseless that this thing occurred and the people went right on about their business as if it never happened. That's what's so disturbing about this. And, therefore, we have to be very careful about the signal of what we say to the community about this kind of serious act.

The trial court imposed the maximum sentence and concluded its comments by stating the following:

I certainly wish you well, Ms. Carter. Good luck to you. [Your] life is really about to begin because you at twenty - thirty percent of twenty-five years gives you an opportunity to subtract five years from that, you'll be out soon. Hopefully we never see you in this court system again. You, of course, by virtue of this sentence means. . . that you will have an opportunity at another shot at it . . . I think you . . . were a victim under certain circumstances yourself and it's most unfortunate that you gotten caught up in this situation. But I think that in the final analysis justice will be done.

You have a support system. I remember you had friends and family who supported you in this matter and I certainly hope they stick by you.

The trial court later filed a document entitled "Sentencing Findings of Fact[,]" which appeared to be a standard form created for the trial court to indicate which statutory enhancement or mitigating factors it found applicable to the case. The five-page form outlining the statutory factors began with the following introductory paragraph:

In determining the appropriate sentence for this offense, this Court has considered the evidence presented at the trial and/or sentencing hearing, the

presentence report, the sentencing principles embodied in Tenn. Code Ann. §
40-35-103 and any arguments made as to alternative sentencing, the nature and
characteristics of the criminal conduct involved, the evidence and information
offered on enhancing and mitigating factors, any statement the defendant
made, if any, on his own behalf about sentencing, and the defendant's potential
for rehabilitation or treatment.

Other than Carter's Range I, standard offender status and the fact that her twenty-five-year
sentence would be served at the Department of Correction, no other factors were checked on
the form. This timely appeal followed.

## ANALYSIS

Carter contends that the trial court imposed an excessive sentence. Despite the
introductory paragraph in the "Sentencing Findings of Fact[,]" Carter argues that the trial
court's oral findings at the sentencing hearing failed to "specifically address with
particularity" its consideration of the sentencing principles, the sentencing guidelines, or the
relevant facts and circumstances of the case. In response, the State contends the trial court
properly exercised its discretion in weighing the necessary factors and purposes of
sentencing. Upon our de novo review, we conclude that the twenty-five-year sentence is
appropriate in this case.

This case is governed by the 2005 amended sentencing act. See T.C.A. § 40-35-210
(2006), Compiler's Notes. Under the amended sentencing act, "the trial court 'shall consider,
but is not bound by' an 'advisory sentencing guideline' that suggests an adjustment to the
defendant's sentence upon the presence or absence of mitigating and enhancement factors."
State v. Carter, 254 S.W.3d 335, 344 (Tenn. 2008) (quoting T.C.A. § 40-35-210(c) (2006)).
Moreover, "[a]n appellate court is . . . bound by a trial court's decision as to the length of the
sentence imposed so long as it is imposed in a manner consistent with the purposes and
principles set out in sections -102 and -103 of the Sentencing Act." Id. at 346. The Court
stated:

The amended statute no longer imposes a presumptive sentence.
Rather, the trial court is free to select any sentence within the applicable range
so long as the length of the sentence is "consistent with the purposes and
principles of [the Sentencing Act]." Id. § 40-35-210(d). Those purposes and
principles include "the imposition of a sentence justly deserved in relation to
the seriousness of the offense," id. § 40-35-102(1), a punishment sufficient "to
prevent crime and promote respect for the law," id. § 40-35-102(3), and

-8-

consideration of a defendant's "potential or lack of potential for . . . rehabilitation," id. § 40-35-103(5).

Id. at 343 (internal footnote omitted). The court also emphasized the broad discretion the trial court has in sentencing a defendant under this act:

[A] trial court's weighing of various mitigating and enhancement factors has been left to the trial court's sound discretion. Since the Sentencing Act has been revised to render these factors merely advisory, that discretion has been broadened. Thus, even if a trial court recognizes and enunciates several applicable enhancement factors, it does not abuse its discretion if it does not increase the sentence beyond the minimum on the basis of those factors. Similarly, if the trial court recognizes and enunciates several applicable mitigating factors, it does not abuse its discretion if it does not reduce the sentence from the maximum on the basis of those factors. The appellate courts are therefore left with a narrower set of circumstances in which they might find that a trial court has abused its discretion in setting the length of a defendant's sentence.

Id. at 345-46.

On appeal, we must review issues regarding the length and manner of service of a sentence de novo with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2006). This means that if the trial court followed the statutory sentencing procedure, made adequate findings of fact that are supported by the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, this court "may not disturb the sentence even if we would have preferred a different result." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). However, in a case where "the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails." Carter, 254 S.W.3d at 345 (citing State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992)).

In this case, we agree with Carter and conclude that the record does not provide sufficient detail regarding the method or analysis employed by the trial court in arriving at its sentence determination. To be fair, prior to imposing sentence, the trial court specifically asked both parties if they had filed notice of any applicable enhancement or mitigating factors. Both parties replied "no," and their arguments at sentencing were general in nature. Regardless, a trial court is required to expressly state on the record how it arrived at its sentencing decision in order to facilitate appellate review. See T.C.A. § 40-35-210(e); State

v. Jones, 883 S.W.2d 597, 599 (Tenn.1994) ("[T]he trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence."), superseded on other grounds by T.C.A. § 40-35-210(c)(Supp. 1996), as recognized in State v. Carico, 968 S.W.2d 280, 288 n.9 (Tenn. 1998). Because we are unable to determine the trial court's sentencing methodology, our review is de novo. See Carter, 254 S.W.3d at 345-46; State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting our de novo review, this Court must consider the following: "(1) [t]he evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114; (6) [a]ny statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) [a]ny statement the defendant wishes to make in the defendant's own behalf about sentencing." T.C.A. § 40-35-210(b)(1)-(7) (2006); see Carter, 254 S.W.3d at 343; State v. Hayes, 337 S.W.3d 235, 264 (Tenn. Crim. App. 2010). In addition, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5) (2006). The defendant has the burden of showing the impropriety of the sentence. See T.C.A. § 40-35-401(d) (2006), Sentencing Comm'n Comments.

Tennessee's Sentencing Act further requires trial courts to "impose a sentence within the range of punishment, determined by whether the defendant is a mitigated, standard, persistent, career, or repeat violent offender." T.C.A. § 40-35-210(c)(2006).

> In imposing a specific sentence within the range of punishment, the court shall consider, but is not bound by, the following advisory sentencing guidelines:
>
> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

§ 40-35-201(c)(1)-(2).

In this case, there is no dispute that Carter qualified as a Range I, standard offender. She was convicted of facilitation of first degree murder, a Class A felony,[3] T.C.A. § 39-13-202, and subject to a sentence of "not less than fifteen (15) nor more than twenty-five (25) years." T.C.A. § 40-35-112(a)(1)(2006). The trial court imposed the maximum sentence of twenty-five years for the facilitation of first degree murder.

Carter contends that her sentence is excessive based upon her minimal criminal history and her potential for rehabilitation. T.C.A. § 40-35-103(1)(A)(5) (2006). She argues that "[t]he minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications," id. §40-35-210(c)(1), (2), and that the sentence imposed was "greater than that deserved for the offense committed." Id. §40-35-103(2).

As an initial matter, we are inclined to note that Carter seemingly argues that she is entitled to a minimum fifteen-year sentence based on the absence of enhancement factors. However, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" Carter, 254 S.W.3d at 343 (citing T.C.A. § 40-35-210(d)); see also State v. Terry Wayne Hawkins, No. E2009-00044-CCA-R3-CD, 2010 WL 1068188 (Tenn. Crim. App., at Knoxville, Mar. 24, 2010) (rejecting similar argument and upholding sentence based on non-statutory enhancement factor). Regardless, upon our de novo review, we conclude that a sentence of twenty-five years is appropriate. First, it is significant that the trial court found that Carter's involvement in this killing was a "conscious disregard for a human life . . . . [u]nlike anything that [he had seen] in [his] tenure here in Shelby County." The trial court also recognized Carter's potential for rehabilitation and stated "by virtue of this sentence . . . [Carter] will have . . . another shot at [life]." On this record, while we acknowledge Carter's minimal criminal history, two theft of property offenses, and Carter's reports that she obtained her GED in 2005, worked at Taco Bell for ten months at the age of eighteen, and participated in anger management and job readiness in jail, we are unable to

_____

[3]Although Carter was sentenced to twelve years for facilitation of especially aggravated robbery, she does not challenge that sentence in this appeal. Therefore, we focus our analysis solely upon her sentence for facilitation of first degree felony murder.

conclude that these factors outweighed the severity of the offense to merit a reduction in her sentence. Given Carter's role in the offense, the seriousness of the offense, and Carter's failure to contact authorities after she saw that the victim had been brutally beaten, we conclude that the record sufficiently supports the trial court's imposition of the maximum sentence. Accordingly, we affirm the judgment of the trial court.


_____

CAMILLE R. McMULLEN, JUDGE