# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### October 23, 2012 Session

## STATE OF TENNESSEE v. GREGORY BRYAN AUSTIN

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 281164     Don W. Poole, Judge**

---

**No. E2012-00641-CCA-R3-CD - June 5, 2013**

---

Defendant, Gregory Bryan Austin, pled guilty to two counts of aggravated statutory rape with an agreed sentence of two years for each count to be served concurrently, with the trial court to determine the manner of service of the effective sentence.   The trial court ordered that Defendant serve six months of his effective two-year sentence in confinement with the balance served on supervised probation.  On appeal, Defendant argues that the trial court erred in denying him full probation.  After a thorough review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and D. KELLY THOMAS, JR., J., joined.

Stevie Phillips, Chattanooga, Tennessee, (on appeal), and Lee Davis, Chattanooga, Tennessee, (at trial), for the appellant, Gregory Bryan Austin.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; William H. Cox, III, District Attorney General; and Neal Pinkston, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Background

*Guilty Plea Submission Hearing*

According to the State's recitation of the facts at the guilty plea submission hearing:

And as a brief factual basis, would show in April of 2010 a Hamilton County investigation began involving [Defendant] and it was determined on two occasions in April of 2010, here in the limits of Hamilton County, that [Defendant] engaged in consensual intercourse on two separate occasions with females who were over the ages of 13 but under the ages of 18, and he, by statute, was 10 years older, which made it an aggravated statutory rape. Their investigation revealed a number of phone calls, text messages and other investigative tools that led to charges.

*Sentencing Hearing*

Detective Ed Merritt of the Hamilton County Sheriff's Office testified concerning his investigation of the present offense. He said:

I was notified on April 26th by my supervisor, Captain Bill Johnson, that he wanted me present in a meeting with the mother of an alleged victim. She apparently had been to the district attorney's office and had said that she had evidence, or believed she had evidence, that her daughter had been having sexual intercourse with a member of the law enforcement community, and I was asked to be part of that meeting and she had been referred to the sheriff's office by the DA's office.

Detective Merritt testified that at some point they determined that there were actually two victims. Detective Merritt testified that the mother of the first victim gave them a phone and it "showed a text message from the victim to the suspect and had a phone number associated with it." They ran the number through a database, and it came back registered to Defendant. When asked how Defendant was associated with law enforcement, Detective Merritt said: "It's my understanding that at some point [Defendant] had some sort of reserve credentials with the Hamilton County Sheriff's Office." However, he testified that Defendant was never a sworn peace officer.

Detective Merritt testified that the sexual encounters occurred between Defendant and the victims at the Waverly Motel in East Ridge. He said that there was a "controlled phone call" between one of the victims and Defendant, at Detective Merritt's direction, during which the victim told Defendant that she had been taken to the doctor because she was pregnant. Detective Merritt testified that the encounters between Defendant and the victims was "more of consensual situation" and involved the exchange of money for particular services by the victims.

Detective Johnny Lanham of the Fort Oglethorpe Police Department in Georgia testified that in October of 2010, he began an investigation of Defendant. He said:

The report [came] in as a rape, but upon further investigation, speaking to the victim and the witnesses, it turned out to be a pandering, which is a prostitution, where [Defendant] had made arrangements with the 15-year-old girl, to pay her to sleep with another girl.

Detective Lanham testified that the events occurred at the Super 8 Motel in Fort Oglethorpe. Detective Lanham testified that Defendant also engaged in consensual intercourse with a 17-year-old girl during an encounter, but that was not an offense in Georgia. However, there was a 13-year-old girl present in the room who witnessed the encounter, which led to a charge of child molestation. Detective Lanham testified that his investigation revealed that Defendant paid the individuals for particular services. He said that the offenses occurred between October 11 and 14, 2010. Detective Lanham testified that Defendant gave some statements in his case, which detailed what happened and corroborated parts of the investigation. He said that Defendant was still awaiting trial in Georgia.

On cross-examination, Detective Lanham testified that he had not reviewed the indictment returned in Defendant's case in Georgia. He was unaware that Defendant was not indicted on the child molestation charge and that the only charge pending against Defendant was for pandering. Detective Lanham agreed that Defendant had spent 46 days in custody in Catoosa County, Georgia.

## II. Analysis

Defendant contends that the trial court erred in ordering him to serve six months of his two-year sentence in confinement. More specifically, he argues that the trial court improperly relied on his pending charges in Georgia to deny full probation.

Our supreme court recently adopted a new standard of review for sentencing in light of the 2005 changes in Tennessee sentencing law. *State v. Bise*, 380 S.W.3d 682 (Tenn.2012). In *Bise*, the Court concluded:

In summary, the 2005 amendments to the 1989 Act were intended to bring our sentencing scheme in line with the decisions of the United States Supreme Court in this area. Accordingly, when the 2005 amendments vested the trial court with broad discretionary authority in the imposition of sentences, de novo appellate review and the "presumption of correctness" ceased to be relevant. Instead, sentences imposed by the trial court within the appropriate

statutory range are to be reviewed under an abuse of discretion standard with a "presumption of reasonableness."

*Id*. Accordingly, we now review a defendant's challenge to the sentence imposed by the trial court under an abuse of discretion standard with a "presumption of reasonableness." *Id*.

Tennessee's Sentencing Act provides:

(c) The court shall impose a sentence within the range of punishment, determined by whether the defendant is a mitigated, standard, persistent, career, or repeat violent offender. In imposing a specific sentence within the range of punishment, the court shall consider, *but is not bound by*, the following advisory sentencing guidelines:

(1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c)(1)-(2) (emphasis added).

In conducting a review of a sentence, this Court must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. T.C.A. § 40-35-210(b); *see also State v. Carter*, 254 S.W.3d 335, 343; *State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002).

Recently, our supreme court held that the same abuse of discretion standard should be applied to the manner of service of a sentence, which includes the grant or denial of probation. *State v. Christine Caudle*, 388 3d 273, 279 (Tenn. 2012). When determining if confinement is appropriate, the trial court should consider whether (1) confinement is

necessary to protect society by restraining a defendant who has a long history of criminal conduct, (2) confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to people likely to commit similar offenses, or (3) measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant. Tenn. Code Ann. § 40-35-103(1)(A)-(C) (2010 Repl.). The trial court may also consider a defendant's potential or lack of potential for rehabilitation and the mitigating and enhancement factors set forth in Tennessee Code Annotated sections 40-35-113 and -114. Tenn. Code Ann. §§ 40-35-103(5) (2010 Repl.), -210(b)(5) (2010 Repl.); *State v. Boston,* 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). The sentence imposed should be the least severe measure necessary to achieve the purpose for which the sentence is imposed. T.C.A. § 40-35-103(4). The burden of demonstrating the suitability for full probation rests with the defendant. Tenn. Code Ann. § 40-35-303(b) (2010 Repl.).

Defendant was an eligible candidate for probation. *See* T.C.A. § 40-35-102(6)(A). At the conclusion of the first part of the sentencing hearing, the trial court said:

> [A]t the very least I will say this at this point in time, that based upon the facts and circumstances of the case, and the plea, that the very least [Defendant] should have, in regard to an alternative sentence, is Community Corrections. So I'm going to do this: At this point in time, I'm going to delay further sentencing until a latter part of March. And I don't want to get into a you-put-yours-off, we-put-ours-off, I want to know what's going to happen.

> So at this point in time, the sentence, at this point in time, will be two years in the Department of Correction[] as a Range I standard offender. He needs to register with the sexual offender registry, he needs to start sexual offender treatment, and then to determine any incarceration or Community Corrections or whatever else will happen, I'm going to set this in the latter part of March. So the judgment will not enter until that time, but I think it appropriate that he starts these other things at this point in time. I'd like to start it then, or come back for complete sentencing in the latter part of March.

At the subsequent portion of the sentencing hearing, it was reported that the Georgia case was still pending. Furthermore, the trial court was told that electronic monitoring could not be ordered for a community corrections sentence but it could be imposed as a condition of probation. It was noted that Defendant had registered as a sex offender and that he had begun treatment. The trial court then sentenced Defendant as follows:

-5-

All right. [Defendant] was before the Court earlier on the sentencing hearing and had entered guilty pleas in two counts of aggravated statutory rape. The agreed-upon sentence, appropriately so, in regard to [Defendant], was two years in the Department of Correction[] as a Range I standard offender, two D felonies, sentences were running concurrently.

We did have a complete sentencing hearing. At that point in time, or at that time, it appeared that [Defendant] does not have any record, prior record. There was proof presented of an involvement in a Georgia case by a Georgia detective and there was proof in regard to that that occurred after this. And I made the statement at that time that based upon the fact that the sentence was less than ten years, certainly he qualifies or is eligible for probation.

He is also eligible for consideration as alternative sentencing because this is a class D felony. So I thought at that point that it was appropriate, at least, to determine whether as part of the alternative sentencing the house arrest could be considered. At that point, we found out that there is a case pending, and certainly, with this case, they will not take it, and I'm not going to order that. It would not be appropriate to order house arrest in regard to a case that they don't handle.

I did make the finding at that time, I think findings were made that I was somewhat concerned about rehabilitation since [Defendant] did incur another case after pleading guilty to these cases up here. I think, appropriately so, not only would that be considered, I think it is an enhancing factor as criminal behavior, based upon the proof we heard, so I think that is some weight to be given to that, under number one as an enhancing factor.

But based upon all the foregoing, then, and the things we said before at the sentencing hearing, [Defendant] is sentenced in count one on the count of aggravated statutory rape to two years in [the] Department of Correction[] as a Range I, standard offender. All of that will be suspended on supervised probation, except he will serve six months in regard to that. The balance will be on supervised probation. He will be registered as a sex offender, which he in fact has done, and will receive sex offender treatment. And based upon the seriousness of it, I think supervised with electronic monitoring would be appropriate.

In regard to count two, he's found guilty and sentenced in regard to aggravated statutory rape, two years Department of Correction[], Range I, standard

offender, suspended on supervised probation with electronic monitoring, all but six months of that, which he will serve in the Hamilton County Workhouse. The balance, as indicated, will be on supervised [probation]. He will register as a sex offender and he must have sex offender treatment.

Defense counsel then clarified to the trial court that Defendant's Georgia offenses did not occur after the guilty pleas in this case, but did occur after Defendant's arrest for the aggravated statutory rape charges in the case *sub judice*. The trial court then said:

And I think that is criminal behavior and I give some weight to that. Certainly he's pled to the minimum, which is appropriate, based upon his background, the minimum sentence. That's what the law would dictate, I think, and what the law would require, but I think a service of that, based upon the seriousness involved in this offense and the fact that he was arrested for that, that's criminal behavior.

The record supports the trial court's decision. Defendant in this case pled guilty to engaging in sexual intercourse on two separate occasions with females who were over the ages of 13 but under the ages of 18, and he paid them for "particular services." His actions were not discovered until the mother of one of the victim's brought a phone to police and showed them a text message from the victim to Defendant. The victim's mother further thought that Defendant was a member of law enforcement due to his having "some sort of reserve credentials with the Hamilton County Sheriff's Office." There was proof submitted that after Defendant's arrest for offenses in the present case, he committed the offense of pandering in the state of Georgia, in which he made arrangements to pay a 15-year-old girl to have sex with another girl. Defendant was awaiting trial for that offense at the time Defendant was sentenced in the present case. Although Defendant was not indicted for a second offense of child molestation, Detective Lanham testified that Defendant engaged in consensual intercourse with a 17-year-old girl, with a 13-year-old girl present in the room who witnessed the encounter.

The fact that Defendant committed new offenses in Georgia after his arrest for the present offenses and presumably while he was out on bond as argued by the State at the sentencing hearing, reflects negatively upon his potential for rehabilitation and militates against the imposition of full probation. We find that the trial court properly relied upon the facts and circumstances of the present case as well as the charges in Georgia as testified to by Detective Lanham. *See State v. Frankie Sue Dees*, No. W2004-02109-CCA-R3-CD, 2005 WL 1768722, at *3 (Tenn. Crim. App. July 26 2005) perm. app. denied (Tenn. Dec. 19, 2005) (in denying full probation, "the record indicates that Defendant had two pending felony charges of prescription fraud in Mississippi"); *State v. Carico,* 968 S.W.2d 280, 288

(Tenn. 1998)("The phrase 'criminal behavior' has not been defined by this Court for purposes of the enhancement factor, but, whatever the precise definition may be, sexual acts with a 10 year old child clearly constitute criminal behavior). The trial court in this case did not abuse its discretion in denying full probation and ordering Defendant to serve six months of his two-year sentence in confinement.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE