# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs July 16, 2013

## STATE OF TENNESSEE v. TRAVIS LEE DOBSON

**Appeal from the Circuit Court for Cannon County**
**No. F11-12    David M. Bragg, Judge**

---

**No. M2012-02361-CCA-R3-CD - Filed November 25, 2013**

---

The Defendant, Travis Lee Dobson, pled guilty to one count of vehicular homicide as a Range I, standard offender, and the trial court imposed twelve years' incarceration. On appeal, the Defendant argues that the trial court erred by imposing the maximum sentence and by denying any form of alternative sentencing. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROGER A. PAGE, JJ., joined.

William B. Bullock (at guilty plea and sentencing), Murfreesboro, Tennessee; and Caleb B. McCain (on appeal), Murfreesboro, Tennessee, for appellant, Travis Lee Dobson.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and Trevor H. Lynch, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
## FACTUAL BACKGROUND

On January 28, 2011, a Cannon County grand jury returned a multi-count indictment against the Defendant, charging him with one count of aggravated vehicular homicide, one count of driving under the influence (DUI), four counts of possession of various controlled substances, and one count of possession of drug paraphernalia. On July 10, 2012, the Defendant entered a nolo contendere plea, as a Range I, standard offender, to one count of vehicular homicide, a Class B felony, and the remaining charges were dismissed. See Tenn.

Code Ann. § 39-13-213(a)(2), (b)(2). Pursuant to the terms of the agreement, the trial court was to determine the length and manner of service of the sentence.

The State offered the following facts as a basis for the guilty plea:

Had this matter gone to trial, the State would have offered evidence and presented testimony to establish on or about May 5th of 2010, Mr. Robert Eddie Ward [(the victim)] was traveling down Auburntown Road in his pickup. As he was headed away from the City of Woodbury [around 2:45 p.m.], the Defendant . . . was traveling into Woodbury in an S.U.V.

[The Defendant] lost control of his vehicle. He hit the curb on the side of the road, over corrected, traveling into [the victim's] lane of travel, struck his vehicle practically head-on. The injuries that [the victim] sustained resulted in his death.

[The Defendant] survived and was transported to the Woodbury hospital, later transferred to Vanderbilt. Blood was drawn. In [the Defendant's] system, the T.B.I. found marijuana, methamphetamine, and amphetamine as a metabolite of the methamphetamine; [d]ihydrocodeine, which was the Lortab; [d]iazepam, which was the Valium; [n]ordiazepam, which is a metabolite or a by-product of the Valium; [a]lprazolam, which is Xanax. After the T.B.I. and the Woodbury Police Department conducted their investigations, [the Defendant] was charged accordingly.

The Defendant confirmed that the prosecutor's recount of the relevant events was true and correct. After further questioning, the trial court accepted the Defendant's plea.

The Defendant's sentencing hearing was held on October 4, 2012. The presentence report was admitted into evidence. At the hearing, the trial court heard from several of the officers who investigated the accident. Woodbury Police Department Officer John House testified that he arrived on the scene and spoke with the Defendant. The Defendant advised Officer House that "he was heading into Woodbury from Auburntown, and was going around a curve a little too fast, got in the gravel, over corrected, entered the oncoming lane, and struck another vehicle." The posted speed limit in that area was thirty miles per hour.

The Defendant further advised Officer House that his driver's license was inside a Crown Royal bag, which Officer House found "between the two vehicles[.]" The bag contained the Defendant's "identification, money, and narcotics[.]" According to Officer House, the following narcotics were discovered in the vehicle: .2 grams of

methamphetamine, 9.2 grams of marijuana, 124 alprazolam (Xanax) pills, and 40.5 dihydrocodeine (Lortab) pills. All of those substances, in addition to amphetamine, diazepam, and nordiazepam, were later found to be present in the Defendant's blood. Inside the Crown Royal bag, Officer House also found drug paraphernalia, a "[m]eth pipe" and "rolling papers[,]" and a large sum of money, $4,540.00.

Trooper Kevin Curtis of the Tennessee Highway Patrol prepared a diagram of the accident scene and, from that diagram, determined that the Defendant was traveling at approximately fifty-two miles per hour at the time of impact. Trooper Curtis found no indication that the victim was operating his vehicle in an "inappropriate manner[,]" and the evidence indicated that the victim's "vehicle remained in the proper lane." Accordingly, Trooper Curtis was able to determine that the accident was the Defendant's fault.

Diane Mooneyham, a paramedic with Cannon County Emergency Medical Services, testified that she treated the victim at the scene. The victim was initially unresponsive, and as they attempted to "work on him, he became combative." According to Ms. Mooneyham, the victim had significant lower extremity injuries, significant chest injuries, facial injuries, and fractures to his right arm. Ms. Mooneyham stated that it took approximately thirty minutes to extricate the victim from the vehicle; they were then able "to take him out and immobilize him." During this time frame, the victim was conscious intermittently and was able to follow simple commands when awake. Once out of the vehicle, the victim became "completely unresponsive" and later died from his injuries.

Cannon County Sheriff Darrell Young also responded to the accident scene on May 5, 2010,[1] and collected "some guns" from the Defendant's vehicle. The Defendant was never charged in relation to these weapons. Sheriff Young then testified about the capabilities of the county jail, stating that he had never before had to "house" a paraplegic and that the jail did not have the resources to meet such needs. According to Sheriff Young, the DeBerry Special Needs Facility of the Department of Corrections (DOC) would be equipped to care for such an individual if that individual received a DOC sentence.

Officer Chip Avera[2] testified to an incident where he was dispatched to a one-car accident involving the Defendant on December 24, 2010, just several months after the victim's death. According to Officer Avera, the Defendant relayed the following details to him:

---

[1] On May 5, 2010, Sheriff Young was employed as Assistant Chief of the Woodbury Police Department.

[2] At the time he was dispatched to the accident on December 24, 2010, Officer Avera was an officer with the Cannon County Sheriff's Department. By the time of the hearing, Officer Avera was employed with the Smithville Police Department.

> As [the Defendant] was traveling down Bradyville Road, he stopped at . . . [a] stop sign and attempted to make a left turn onto Murfreesboro Road. At which time he says the other vehicle ran the stop sign and attempted to cut him off, and which caused him to wreck.
>
> He ran off the road directly across from Bradyville Road into a creek or large ditch.

The Defendant was unable to produce a driver's license for Officer Avera and also could not provide proof of insurance. Officer Avera's computer check revealed that the Defendant's license was suspended at that time.

The trial court also heard from members of the victim's family, including the victim's wife, stepson, aunt, and cousin, about the impact the victim's death had on them and their wishes for sentencing.

In an attempt at mitigation, the forty-three-year-old Defendant presented testimony from his father, Stan Dobson. Mr. Dobson testified that the Defendant was a paraplegic due to an on-the-job accident that occurred on February 22, 2001, and was in pain "most of the time" due to his injuries. Mr. Dobson provided the court with information about the Defendant's medical condition following that 2001 accident. According to Mr. Dobson, the Defendant was cared for by a paid caregiver seven days a week, and the Defendant's family and friends were available to assist the Defendant in the evenings. Mr. Dobson stated that an annuity had been set up to pay the Defendant's medical bills following the accident and that he also received disability income. Mr. Dobson estimated that it costs approximately $50,000.00 per year to pay for the Defendant's medical care. The Defendant's caregiver also testified.

After hearing the evidence and the arguments of counsel, the trial court ruled from the bench, imposing the maximum twelve-year sentence for the Class B felony conviction and denying any form of alternative sentencing. In determining the length of the Defendant's sentence, the trial court found the following enhancement factors to be applicable:

> First, that the Defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to support the appropriate range. The [c]ourt was surprised to read the presentence report and find the number of prior convictions in [the Defendant's] case. And several of those were driving related.

Also, that even after being involved in such an event, [the Defendant] took it upon himself to drive a car illegally, which ended up, fortunately, only in an accident that involved himself.

It appears that he's had the opportunity to have folks do things for him and take care of things for him. Yet, he finds the need, for whatever reason, to get in a vehicle, which is not a healthy thing for him.

So, the court believes that his prior history, which includes not only driving related events, but an assault charge, a concealing charge, a grand larceny charge, a burglary charge, and some drug charges should be considered by the [c]ourt to be an enhancement factor. And that those are not necessarily involved as essential elements of this offense.

. . . .

The [c]ourt further finds that based on his record, [the Defendant] has failed to comply with conditions of a sentence involving release into the community. And the [c]ourt would concede that those were some time ago. But the [c]ourt would also consider that he has evidenced, by his behavior, a disrespect for the law and disrespect for his own wellbeing. That he has previously been placed on probation and not been successful.

The trial court concluded that no mitigating factors applied to this case.

The trial court made the following findings of fact and conclusions of law in rendering its decision to deny the Defendant an alternative sentence:

The [c]ourt has previously commented on the Defendant's criminal history, which it's found to be an enhancement factor. And the [c]ourt finds very little evidence that it should take in to consider[ation] the Defendant's physical condition, since the fact that he continues to get in a vehicle and drive on the roads in the condition that he is in when he has folks to help him and has the ability to retain people to help him. Yet he chooses on his own to get in a vehicle. And based on his own condition, it's apparent he has some significant problems. That he has some significant pain issues, has to take pain medication.

-5-

But he also chooses to self-medicate, as evidenced by the substances that were found in his body, and that caused him certainly not to be a sober individual at the time he was driving a vehicle.

The [c]ourt has considered the previous actions and character of the Defendant as represented by his prior criminal history and his -- or lack of favorable testimony concerning his reputation or his good acts in the community.

Whether or not he might reasonably be expected to be rehabilitated, and his potential or lack of potential for rehabilitation, including the risk that during the period of probation the Defendant would commit another crime. And [the Defendant] has provided the [c]ourt with that evidence. Because while he was on bond awaiting trial or disposition of these charges, he was out driving again with no driver's license, no insurance, and as previously stated, ended up in an accident.

Whether or not it might reasonably appear that he would abide by the terms of probation. And it appears that he would not since he could not keep his conduct lawful at the time that he was awaiting this disposition.

Whether or not the interest of society in being protected from future criminal conduct of the Defendant are great. And it appears, based on [the Defendant's] behavior, that society does have an interest in being protected from his behavior.

Whether or not measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the Defendant. I don't know how much time [the Defendant] has served on these prior arrests. So, the [c]ourt doesn't have any particular opinion on that.

Whether or not a sentence of full probation would depreciate the seriousness of the offense in considering the evidence submitted on what was in [the Defendant's] blood at the time he was driving a vehicle and the fact that it was early in the day. And although [defense counsel] has stated he doesn't believe there's been much publicity about this case, the [c]ourt believes there has been some publicity about this case. And certainly several -- the fact that so many members of the community are present in the courtroom at this time would indicate that there are people in the community who are concerned

about the case and take an interest in it. And certainly a sentence of full probation would unduly depreciate the seriousness of the offense in this case.

Whether or not confinement is particularly suited to provide an effective deterrent to others likely to commit similar offenses. And that's a difficult thing to make a decision on. But the [c]ourt believes it would have an impact.

And whether or not the offense was particularly enormous, gross, or heinous. And the [c]ourt has heard testimony today about how enormous this offense was and the impact it's had on this family.

[The Defendant] has suffered an accident while at work that left him disabled. Whether by settlement or judicial process, he has received what the statutes allow someone in that position. And, yet, in spite of having his needs provided for, he has continued to participate in a conduct of illegal possession of drugs, driving under the influence of medications.

And given the totality of the circumstances, looking at the record in this case, it appears to this [c]ourt that it was just a question of when and who happened to be on the road at the time when this wreck happened.

The [c]ourt finds [the Defendant] to be a danger to himself and his community . . . .

This appeal followed.

## ANALYSIS

On appeal, the Defendant raises two challenges to his sentence: first, that the trial court improperly sentenced him to the maximum in his range and, second, that the trial court erred in denying any form of an alternative sentence. The State responds succinctly to the Defendant's arguments that he "has failed to overcome the presumption that his maximum sentence is reasonable." The State cites to general case law and does not specifically address any of the evidence supporting enhancement of the Defendant's sentence. The State also does not address the Defendant's alternative sentencing argument except to say that the trial "court's consideration of the principles of sentencing and the weighing process concerning

the suitability of the [D]efendant for any alternative sentence is spread upon the record."[3] Ironically, the States argues, "The [D]efendant has failed to include appropriate citation to the record in his argument and has therefore waived consideration of the sentence on appeal." Such is simply not the case; the Defendant makes the appropriate citations to the record.

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider: (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b). To facilitate appellate review, "it is critical that trial courts adhere to the statutory requirement set forth in Tennessee Code Annotated section 40-35-210(e)" and articulate in the record its reasons for imposing the specific sentence. See State v. Bise, 380 S.W.3d 682, 705 n.41 (Tenn. 2012).

The 2005 amendments to the Sentencing Act "served to increase the discretionary authority of trial courts in sentencing. Id. at 708. Currently, upon a challenge to the sentence imposed, including questions related to probation or any other alternative sentence, it is the duty of this court to analyze the issues under "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707; see also State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012). Those purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," Tennessee Code Annotated section 40-35-102(1), a punishment sufficient "to prevent crime and promote respect for the law," Tennessee Code Annotated section 40-35-102(3), and consideration of a defendant's "potential or lack of potential for . . . rehabilitation," Tennessee Code Annotated section 40-35-103(5). See State v. Carter, 254 S.W.3d 335, 344 (Tenn. 2007). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; see also State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001).

*A. Length*

The Defendant challenges the imposition of the maximum, twelve-year sentence for his Class B felony conviction. Our amended Sentencing Act no longer imposes a presumptive

---

[3] While it is true, as discussed later herein, that the record supports the trial court's sentencing decision, the State does not include any analysis as to how the evidence "spread upon the record" supports such a determination.

sentence. Carter, 254 S.W.3d at 343. Tennessee Code Annotated section 40-35-210 was amended to provide as follows:

> (c) The court shall impose a sentence within the range of punishment, determined by whether the defendant is a mitigated, standard, persistent, career, or repeat violent offender. In imposing a specific sentence within the range of punishment, <u>the court shall consider, but is not bound by, the following advisory sentencing guidelines</u>:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

> (d) The sentence length within the range should be consistent with the purposes and principles of this chapter.

Tenn. Code Ann. § 40-35-210(c), (d) (emphasis added).

"[T]he 2005 amendments rendered advisory the manner in which the trial court selects a sentence within the appropriate range, allowing the trial court to be guided by—but not bound by—any applicable enhancement or mitigating factors when adjusting the length of a sentence." Bise, 380 S.W.3d at 706. In accordance with the broad discretion now afforded a trial court's sentencing decision,

> misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005. So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld.

Id.

Because the Defendant was convicted of a Class B felony, as a Range I, standard offender, he was subject to a sentence range of eight to twelve years. See Tenn. Code Ann. § 40-35-112(a)(2). In sentencing the Defendant to the maximum within the range, the court

applied enhancement factor (1), that the Defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. Tenn. Code Ann. § 40-35-114(1). The record revealed that the Defendant had a number of convictions for concealing stolen property, malicious secretion of property, drug possession, assault, a prohibited weapons offense, and public intoxication. He also had convictions for multiple driving offenses—DUI, second offense, driving while intoxicated, three driving on a revoked license offenses, and reckless driving. In applying this factor, the trial court also considered the allegations of Officer Avera about the Defendant's criminal behavior on December 24, 2010, which followed the accident resulting in the victim's death. The trial court also applied enhancement factor (8), that the Defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community. Tenn. Code Ann. § 40-35-114(8). The presentence report reflected that the Defendant violated his effective four-year probationary sentence, received in 1988 for concealing stolen property and three counts of malicious secretion of stolen property. The month following his placement on probation for these convictions, the Defendant was involved in "additional criminal activity" and "was declared an absconder from state probation"; he was later convicted of three misdemeanor offenses in January 1991. His probation was revoked but was reinstated shortly thereafter in February of 1991. He incurred new arrests in the months that followed and was later found guilty of four misdemeanor offenses. His probation was again revoked in July 1992 and was reinstated after serving 180 days. In 1995, he was discharged from state probation.

The Defendant argues that the trial court erred in applying these factors to enhance his sentence. He first submits that the "trial court improperly considered offenses for which [he] was not convicted[,]" referring to the trial court's consideration of his December 24, 2010 behavior. He notes that the driving on a revoked license was later dismissed and that it was inappropriate for the trial court to rely on that pending charge to enhance his sentence. The Defendant is correct that evidence of merely being arrested and charged with a crime does not per se equate with evidence of criminal behavior within the meaning of this enhancement factor. See State v. Marshall, 870 S.W.2d 532, 542 (Tenn. Crim. App. 1993). Notwithstanding, prior criminal acts for which there has been no conviction may constitute "criminal behavior," if proven. State v. Carico, 968 S.W.2d 280, 288 (Tenn. 1998); see also State v. Anthony Joel Allen, Jr., No. 01C01-9612-CC-00514 (Tenn. Crim. App. May 7, 1998) (while it is impermissible to use only arrest records to establish criminal behavior, enhancement is permissible when the episodes of criminal behavior are established by the testimony of witnesses). Here, Officer Avera testified sufficiently about the Defendant's criminal behavior on December 24, 2010. The Defendant's argument on this point fails.

The Defendant also contends that the "trial court improperly applied old offenses[,]" stating that the "major convictions" relied upon "were approximately twenty years old and

-10-

older" and that, in the last twenty years, he was only convicted misdemeanor offenses. Thus, he claims that he "is being punished for the rash behavior of a young man some two decades after the fact." Although the trial court may consider the amount of time that has passed since a prior conviction in assessing the weight to be given to that enhancement factor, it is not required to do so. See State v. Charles Hamlin, No. M1999-01970-CCA-R3-CD, 2000 WL 1208314, at *2 (Tenn. Crim. App. Aug. 24, 2000). The Defendant's argument regarding this enhancement factor is essentially that the trial court abused its discretion in the weight given to the factor.[4] While the Defendant is correct that his only felony conviction for concealing stolen property is over twenty years old, his argument ignores the other criminal conduct relied upon by the trial court in determining the weight to give the enhancement factor for prior criminal convictions or behavior. See State v. Roger Vines, No. M2011-01094-CCA-R3-CD, 2012 WL 2412164, at *6 (Tenn. Crim. App. June 27, 2012). The Defendant also had a plethora of misdemeanor convictions for driving and intoxication offenses, similar to those at issue here. See State v. Robert Wayne Wait, No. E2010-01212-CCA-R3-CD, 2011 WL 5137178, at *16 (Tenn. Crim. App. Oct. 28, 2011) (citing State v. Johnny Robinson, No. 02C01-9505-CC-00126, 1996 WL 89419, at *2 (Tenn. Crim. App. Feb. 29, 1996) (defendant had no prior felony convictions, but did have at least two convictions for DUI, two convictions for driving with a revoked license, and three convictions for public intoxication, which were similar to convictions at issue; therefore, the trial court, was entitled to give considerable weight to the factor in assessing the length of the vehicular assault sentence)), perm. app. denied, (Tenn. Mar. 7, 2012). Moreover, as noted above, the Defendant's criminal behavior on December 24, 2010, i.e., driving on a revoked license and failing to provide proof of insurance, can also be considered in application of this factor.

As a final issue regarding enhancement of his sentence, the Defendant argues that the "trial court improperly relied on an element of the conviction offense[.]" In this regard, he cites to the trial court's statement that "the Defendant 'chooses to self medicate as evidenced by the substances that were found in his body' when discussing enhancement factors." He extrapolates that the "fact that Defendant had substances in his body was essential to proving his intoxication." However, the record belies his contention because the trial court made this statement in relation to its decision to deny the Defendant an alternative sentence, not as a part of its decision to apply certain enhancement factors.

The Defendant justly deserves to have his sentence substantially enhanced given his extensive history of criminal convictions, spanning most of his adult life; his criminal behavior following the fatal accident; and his past failures, albeit "some time ago[,]" at

___

[4] We note that the Defendant makes no real argument in this section of his brief to the application of enhancement factor (8), although he does make a similar argument about the "old" nature of the probation violations in the trial court's decision to deny any alternative sentence. Again, any argument about the length of time which has passed goes to the weight, not the application, of the enhancement factor.

complying with the conditions of a sentence involving release into the community. The trial court properly applied enhancement factors (1) and (8). Moreover, we reiterate that the trial court may set a sentence anywhere within the applicable range so long as the sentence is consistent with the principles and purposes of the Act, regardless of the presence or absence of mitigating and enhancement factors. The trial court in this case thoroughly considered the purposes and principles of the Sentencing Act in rendering its decision; therefore, the imposition of the maximum sentence in the range is affirmed.

### B. Alternative Sentencing

The Defendant takes exception to the denial of an alternative sentence. A defendant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. See Tenn. Code Ann. § 40-35-102(6)(A). Here, the Defendant was convicted of a Class B felony and thus is not to be considered a favorable candidate for alternative sentencing. Moreover, no defendant is entitled to a presumption that he or she is a favorable candidate for alternative sentencing. Carter, 254 S.W.3d at 347.

In determining a defendant's suitability for alternative sentencing, the trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1)(A)-(C). A trial court should also consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code Ann. § 40-35-103(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). Ultimately, in sentencing a defendant, a trial court should impose a sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4).

Additionally, an offender is eligible for probation if he or she is sentenced to ten years or less and has not been convicted of certain specified offenses. See Tenn. Code Ann. § 40-35-303(a). The Defendant, sentenced to twelve years, was statutorily ineligible for probation. Despite the fact that the Defendant was not eligible for probation due to the length of his

sentence, the trial court considered the factors applicable to probation, i.e., the circumstances of the offense, the Defendant's criminal record, social history, and present condition; the deterrent effect; the Defendant's potential for rehabilitation; and whether probation would serve the ends of justice and the best interests of the Defendant and the public. See State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978).

The Defendant argues that the "trial court improperly considered old probation violations in denying a suspended sentence." He submits that the two violations of his 1988 probationary sentence, over two decades old, did not qualify as frequent or recent. The trial court used the previous violations in application of enhancement factor (8) but did not consider the previous violations as a basis to deny an alternative sentence because measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the Defendant. In fact, the trial court stated that it did not "have any particular opinion on that." The record contradicts the Defendant's assertion and does not provide him with relief.

Moreover, he argues that the "trial court improperly considered offenses for which [he] was not convicted to deny probation[,]" referring to the trial court's consideration of the December 24, 2010 charges. We disagree. The fact that the Defendant committed driving offenses after his arrest in the present case and while he was out on bond, reflects negatively upon his potential for rehabilitation and militates against the imposition of an alternative sentence. We conclude that the trial court properly relied upon the December 24, 2010 charges as testified to by Officer Avera. See State v. Gregory Bryan Austin, 2013 WL 2424144, at *5 (Tenn. Crim. App. June 5, 2013) (citing State v. Frankie Sue Dees, No. W2004-02109-CCA-R3-CD, 2005 WL 1768722, at *3 (Tenn. Crim. App. July 26, 2005) (in denying full probation, "the record indicates that [d]efendant had two pending felony charges of prescription fraud in Mississippi")), perm. app. filed, (Aug. 5, 2013).

As a final argument for alternative sentencing, the Defendant, a paraplegic, contends that the "trial court improperly disregarded [his] extremely poor physical condition in denying probation[.]" He notes that the taxpayer will bear the burden for his care because it will cost the State "tens, if not hundreds of thousands of dollars of its limited resources every year that [the Defendant] is confined to a state penal institution." The trial court made multiple statements reflecting that it did in fact consider the Defendant's physical condition in its decision, noting that despite that condition, the Defendant continued to drive while under the influence although he had assistance available. The trial court heard testimony that the Defendant's physical needs could be tended to at the DeBerry Special Needs Facility during his incarceration. Again, the record does not support the Defendant's contention that the trial court disregarded his physical condition in its decision to deny probation or an alternative sentence.

The record contains no proof which supports a finding that the Defendant's sentence would best be served in the community rather than in a correctional institution. This becomes all the more important in this case in view of the fact that the Defendant is not presumed a favorable candidate for alternative sentencing as a Class B felon. The Defendant has a criminal history evincing a clear disregard for the laws of society, and his arrest while on bond for the instant offenses comments poorly upon his potential for successful rehabilitation. See Tenn. Code Ann. § 40-35-103(1)(A), (C). These factors were noted by the trial court in its decision to deny any form of alternative sentencing. Our review persuades us that the trial court considered the sentencing principles and all relevant facts and circumstances in making its determination. Thus, we conclude that the trial court did not abuse its discretion in denying probation or any other form of alternative sentencing.

## CONCLUSION

Based upon the foregoing, the sentencing decision of the Cannon County Circuit Court is affirmed.

_____

D. KELLY THOMAS, JR., JUDGE

-14-